## W. D. McCoy v. The State.

No. 12698.   Delivered November 6, 1929.

The opinion states the case.

*W. B. Howard* and *Williams and Bell,* all of Childress, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

MARTIN, JUDGE.—Offense, the unlawful possession of liquor for the purpose of sale; penalty, one year in the penitentiary.

An officer crept up to appellant's house in the night-time and heard a recent arrival call for whiskey to which appellant replied he would have to go get it. Appellant left the premises and in a few minutes returned with a pint of whiskey. He had or was about to deliver the whiskey when he was arrested. Search of appellant revealed a small funnel in his pocket which smelled of whiskey. A jug presumably containing whiskey seems also to have been secured on this trip but the proof with reference to this is in a confused state. Appellant did not testify.

Jury misconduct is the only law question which we deem necessary to discuss. It is alleged in motion for new trial that (1) some of the jurors while deliberating and while they were divided upon the question of guilt or innocence stated "that if the whiskey did not belong to the defendant that he should have taken the witness stand and denied it and that if defendant was innocent, he

should have testified; that an innocent man rarely failed to testify in his own behalf." (2) That the jury while divided upon the question of guilt or innocence received other testimony in that juror Sides stated to the other jurors that the defendant's filling station was located on a road that he passed every day and that it looked suspicious and that he had remarked about it to his wife and she to him. Upon a hearing on this motion, Juror Thomas testified in part:

"The meaning of what I said was that a man who honestly believed himself innocent was willing to say so on the witness stand —or was willing to go on the witness stand and testify in his own behalf. . . . That was during the deliberations of the jury on the question of the guilt or innocence of the defendant. . . . It was something like an hour or an hour and a half after that when we arrived at our verdict. . . . Yes, I believe I recall Mr. Sides making a remark in the presence of the jury with reference, or concerning, the defendant and his place of business, which hadn't been introduced in evidence on the witness stand. . . . Mr. Sides made some statement to the general effect that he could pass there most any time and see more or less disorder . . . and evidence of considerable hilarity and disorder going on there. Yes, he outlined probably two instances of that kind. . . . In substance he said on one occasion he and his wife were driving by there and they saw the usual gang of cars and some men collected there and off somewhere on the roadside or nearby there he saw a car parked with two men and two women in it, and especially one of these women was making a spectacle of herself in trying to convince the whole world that she was about the drunkest individual in it. . . . That she gave a Comanche screech or two and pulled up her clothing, and he said he had no doubt of the truthfulness of her statement about being drunk. Yes, the place of business he was talking about . . . was the same place of business referred to in the trial of this case and evidence was offered in the trial of this case to show that the defendant possessed whiskey on said premises for the purpose of sale. The remarks . . . were made during the deliberations and before we had reached a verdict and when we stood divided on the question of the guilt or innocence of the defendant. . . . No sir, I was not influenced by any of these outside matters."

Others of the jury gave similar testimony. The State's theory seems to be that because the jurors testified that the above matters

did not influence their verdict, the error was harmless. Such is not the law. The law question at issue has so ofttimes been decided that we content ourselves with two quotations without wasting space to discuss what has been many times reiterated:

Presiding Judge Morrow in the case of Rees v. State, 278 S. W. 453, uses the following language:

"We take occasion to reiterate that which has often been said before; namely, that where a mandatory provision of the statute, such as the comment upon the failure of the accused to testify, is made in the jury room, or new and material evidence against the accused is received, the presumption of injury is not to be rebutted by the conclusion of the juror that he was not influenced. When improper evidence is received during the trial, or illegal comment made by the court or counsel, it has never been thought competent to inquire into its effect by calling upon the jurors to testify that their verdict was or was not influenced by these improper proceedings. When such violations of the statute take place in the retirement of the jury, for a stronger reason, this principle would apply. The announcements of the court to that effect have been frequent and of long standing. See Mitchell v. State, 36 Tex. Cr. R. 278, 33 S. W. 367, 36 S. W. 456; McDougal v. State, 81 Tex. Cr. R. 187, 194 S. W. 944, L. R. A. 1917E, 930, and precedents there cited; also Clements v. State, 69 Tex. Cr. R. 371, 153 S. W. 1137."

Again in Sparks v. State, 300 S. W. 938, we used the following language in discussing a similar question:

"Where evidence is received by the jury after its retirement which is calculated to bring about a conviction, this court will not speculate on its injury to appellant. Reception of such evidence requires this court under the statute and its uniform holdings to award a new trial. Brown v. State, 101 Tex. Cr. R. 639, 276 S. W. 929; Howell v. State, 94 Tex. Cr. R. 563, 252 S. W. 539; article 753, sub. 7, Vernon's C. C. P. 1925, and authorities there cited."

The judgment is reversed and cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.