JOE F. LONG, JR. V. STATE

No. 32,211. November 16, 1960

WOODLEY, Judge, dissented.

*Jones, Parish, Fillmore, Robinson and Lambert,* by *Clyde Fillmore,* Wichita Falls, for appellant.

*L. T. Wilson,* District Attorney, by *Barbara C. Crampton,* Assistant District Attorney, Wichita Falls, and *Leon Douglas,* State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

The offense is receiving and concealing stolen property; the punishment, 2 years.

In view of our disposition of this case, a recitation of the facts will not be deemed necessary.

Appellant's Bill of Exception No. 2 reflects that while the accomplice witness Dunbar was testifying the district attorney held in his hand a statement or confession of the said Dunbar, re-

ferred to the same during his examination of the witness, presented the same to Dunbar, had him acknowledge that he had signed it, and that appellant's counsel was then refused permission to examine such statement for the purpose of cross examining said witness. In this the court was clearly in error. Board v. State, 122 Tex. Cr. Rep. 487, 56 S. W. 2d 464, presents almost an identical situation and requires a reversal of this conviction. See also Green v. State, 110 S. W. 920; Palacio v. State, 164 Tex. Cr. Rep. 460, 301 S. W. 2d 166; Jackson v. State, 166 Tex. Cr. Rep. 348, 314 S. W. 2d 97; McCormick & Ray Texas Law of Evidence, 2nd Ed., p. 449, Sec. 553; 44 Tex. Juris. 1140, Sec. 144; and 1 Branch's Ann. P. C., 2nd Ed., p. 189, Sec. 182.

Another serious question is presented by this record which we have concluded calls for a dismissal of this prosecution. It was established that the then-existing grand jury in the 30th Judicial District of the same county had deliberated on the charge against appellant, as well as two or three others, and had returned no bills. Following this, the jury commission, which appointed the grand jury who returned the instant indictment, was appointed. A member of such jury commission talked to "two or three" prospective grand jurors and had his business partner, who was "concerned" about the failure of the 30th District grand jury to indict appellant and others, talk to two other prospective grand jurors. It is these conversations which have caused us deep concern. In each of them the man who later became a grand juror was asked, when being approached by the jury commissioner and his partner, about whether or not he would be willing to serve, why a new grand jury was needed when one was already in existence, and in each case the prospective grand juror was informed that the existing grand jury had refused to indict appellant. It was after this information was given the prospective grand juror that he agreed to serve if selected and did in fact serve. This conduct on the part of the jury commission in question was in direct violation of the terms of Article 835, V.A.C.C.P.

This court and the Supreme Court of the United States from time to time have been called upon to quash grand jury indictments because of discriminatory practices on the part of jury commissioners in the selection of grand jurors. These cases usually arose when the discrimination was racial. Some of the more recent cases are Eubanks v. Louisiana, 356 U. S. 584, 2 L ed. 2d 991, 78 S. Ct. 970; Patton v. Mississippi, 332 U. S. 463, 92 L. ed. 76, 68 S. Ct. 184, 1 A. L. R. 2d 1286; and Reece v. Georgia, 350 U. S. 85, 100 L. ed. 77, 76 S. Ct. 167.

264

The rule announced, however, is by no means limited to racial discrimination, but includes all fact situations where discrimination is practiced against the accused for any reason.