O. P. CARRILLO, Appellant,

v.

The STATE of Texas, Appellee.

No. 57329.

Court of Criminal Appeals of Texas, Panel No. 2.

May 10, 1978.

Rehearing En Banc Denied June 28, 1978.

904

Randy Schaffer, Houston, for appellant.

Oscar McInnis, Dist. Atty., Edinburg, F. A. Cerda, Dist. Atty., Hebbronville, John L. Hill, Atty. Gen., Max P. Flusche, Jr., and Gerald C. Carruth, Asst. Attys. Gen., Austin, for the State.

Before ONION, P. J., and DOUGLAS and ODOM, JJ.

## OPINION

ONION, Presiding Judge.

This is an appeal from a felony theft conviction under the former Penal Code. A jury found appellant guilty and assessed his punishment at four (4) years' confinement.

Appellant urges twenty-one grounds of error.

In his first ground of error, appellant challenges the sufficiency of the evidence to establish that he was a principal to the offense of theft. Omitting the formal parts, the indictment alleges:

". . . that O. P. Carrillo, on or about the 11th day of January, A.D.1972, and before the presentment of this indictment, in said County and State, did then and there unlawfully and fraudulently take current money of the United States of the value of over two hundred dollars ($200.00), the same then and there being the corporeal personal property of the Duval County Conservation and Reclamation District, from the possession of the said District, without the consent of the said District, and with the intent then and there to deprive the said District of the value of the same and to appropriate it to the use and benefit of himself, the said O. P. Carrillo."

The record reflects that in November, 1971 appellant purchased a station wagon from M & R Motor Company for $5,631.00 and paid for it by personal check. His bank account was already overdrawn at the time but he secured a sixty (60) day loan from his bank for $5,650.00, placed that money in his account, and the check to M & R Motor Company was paid even though appellant's account remained overdrawn by $50.19 after the payment was made. Appellant was a director of the bank.

In early January, 1972, just before the sixty day note was due, appellant told Rodolfo Couling, a friend and business associate, that George Parr[1] was going to give him a station wagon and that the check for it was going to come from the Water District, the name commonly used to refer to the Duval County Conservation and Reclamation District. Couling at the time was the tax collector for the Benavides Independent School District and operated a hardware store under the name of Benavides

---

1. The record later reflects that George Parr was the head of the political group which was in control of Duval County and its political subdivisions at the time and that appellant and the Carrillo family were then affiliated with the Parr political organization.

Implement and Hardware Company (BIHC). Although Couling was listed as the sole owner of BIHC, and his bank account and income tax statements so indicated, he testified that in fact appellant and appellant's brother, Ramiro Carrillo, were his silent partners and he had opened the store with the financial help of Ramiro Carrillo. BIHC sold supplies to various branches of local governmental bodies and to local people of Duval County. Couling stated that he had paid hundreds of thousands of dollars to the Carrillos during the five or six years he operated BIHC under this silent partnership arrangement.

On January 10, 1972, the Water Board met at its regularly scheduled monthly meeting and approved several bills for payment, which may have included four invoices from BIHC totalling $5,625.00. It was stipulated that the minutes of the meeting and the approved invoices were no longer in existence at the time of the trial, but Couling testified that he did not submit the invoices on behalf of BIHC and that BIHC had not performed services nor sold anything to the Water District to support the invoices. The only evidence of the invoices was the notation on the check issued by the Water District that it was in payment for invoices numbered 289 through 292. Both appellant and his brother, Ramiro, had a supply of invoice forms from BIHC.

The Water District is a political subdivision governed by an elected four-member board. In January, 1972 the board consisted of D. C. Chapa, who was the president of the board and the father of appellant; Jose Tovar, the secretary-treasurer; and Herberto Garza and Julio Benavides, members. Mr. Tovar and Mr. Benavides were deceased at the time of trial. Mr. Garza testified that he would never knowingly consent to anybody stealing money from the Water District and would vote to authorize paying a bill only if it was valid, but he stated he never voted against anything that D. C. Chapa wanted to do. He did not recall discussing invoices from BIHC at that meeting. D. C. Chapa did not testify.

The Water District check for $5,625.00 to BIHC was signed by Mr. Tovar and counter-signed by D. C. Chapa on January 11, 1972 and delivered to Mr. Couling by either appellant or appellant's nephew who was an employee of the Water District. Couling deposited the Water District check in the BIHC bank account on January 13, 1972, and on the same day gave to appellant a blank check drawn on the BIHC account. Couling testified that he wrote the date, the notation "one stationwagon," and his signature on the check. On this same day, the remaining blank spaces on this check were filled in to make it payable to appellant's bank in the amount of $5,725.34 and the check was used to pay off appellant's loan for the station wagon. It was indicated that the amount of $5,725.34 was the amount of the loan plus interest for two months.

Appellant's contention that the evidence was not sufficient to establish that he was a principal is two-pronged. He argues that the offense of theft was complete when Couling accepted the Water District check knowing he was not entitled to it and that since the evidence does not clearly account for the presence and activities of appellant at that time, then the evidence might demonstrate that he received stolen property but not that he was a principal to the theft.

We do not find these arguments to be persuasive.

The indictment charged appellant with theft of money, not a check, and in *Hedge v. State*, 89 Tex.Cr.R. 236, 229 S.W. 862 (1921), this court noted the difference between stealing a check and stealing money. In that case, a debtor mistakenly gave his creditor a check for an amount $424.21 in excess of the amount actually owed. The creditor, knowing the check to be excessive, cashed it and commenced flight across the state. He was charged with and found guilty of stealing the $424.21 and not the check itself. This court held that when the creditor, with the intent to appropriate the excess amount, cashed the check, he was guilty of the theft of money because the check was but a means to obtain the money.

See also *Speer v. State*, 123 Tex.Cr.R. 188, 58 S.W.2d 95 (1932), wherein a sheriff received a warrant for $1,000.00 in excess of a bill he had submitted to the State and this court, in upholding the conviction for theft of the $1,000.00, found that the warrant was but the means by which he had obtained the money. Here, there is ample evidence to show that the check from the Water District was but the means by which appellant obtained the money to pay off his sixty day note and that therefore the theft was not complete when Couling accepted the check.

■ It must be remembered that this is not a quick crime of violence where the offense is conceived, executed and accomplished in an instant nor is it a simple case where thieves break in and steal property that is in the possession of the owner. Here the jury was fully justified in finding a broad, comprehensive scheme involving appellant and others to steal money from the Water District and the offense was not committed by a simple act, but a series of acts which culminated in appellant receiving money.

In *Bush v. State*, 506 S.W.2d 603 (Tex.Cr. App.1974), it was stated:

"In determining whether a party was acting as a principal, the trial court may look to events before, during and after the commission of the offense. *Westfall v. State*, 375 S.W.2d 911 (Tex.Cr.App. 1964). Further, '[A]n agreement of parties to act together in a common design can seldom be proven by words, but reliance can often be had on the actions of the parties showing an understanding and common design to do a certain act.' *Everett v. State*, 153 Tex.Cr.R. 79, 216 S.W.2d 281, 283 (1949)."

The evidence here showed a common design and understanding between appellant and Couling, and perhaps others, to steal money from the Water District. In November, appellant was overdrawn at his bank, but bought a station wagon and obtained a sixty day loan for $5,650.00 to cover the purchase. In early January appellant told Couling that George Parr was going to give him a station wagon and the check for it would come from the Water District. On January 11, the Water District issued a check for $5,625.00 to BIHC for which BIHC had neither performed services nor provided goods. Couling, the ostensible owner of BIHC, did not submit invoices to the Water District for this or any other amount, but his silent partner, appellant, had a supply of blank BIHC invoice forms. When Couling received the check, he deposited it in the BIHC account and on the same day gave appellant a blank, signed check with the notation "one stationwagon" on it. Also on the same day, appellant took this blank check to his bank where the amount of his loan, plus interest, was filled in and the loan repaid. Under these circumstances, we conclude that the evidence is sufficient to show that appellant was a principal to the theft.

This ground of error is overruled.

■ Appellant next argues that the evidence is insufficient to corroborate the testimony of the accomplice witness Couling. The trial court correctly charged the jury that Couling was an accomplice as a matter of law and properly charged the jury with respect to accomplice testimony.

The criteria by which accomplice testimony is judged was set forth in *Bentley v. State*, 520 S.W.2d 390 (Tex.Cr.App.1975), as follows:

"In *Edwards v. State*, 427 S.W.2d 629, 632 (Tex.Cr.App.1968), this court stated:

" 'The test as to the sufficiency of the corroboration is to eliminate from consideration the evidence of the accomplice witness and then to examine the evidence of other witnesses with the view to ascertain if there be inculpatory evidence, that is evidence of incriminating character which tends to connect the defendant with the commission of the offense. If there is such evidence, the corroboration is sufficient; otherwise, it is not. *Dalrymple v. State*, Tex.Cr.App., 366 S.W.2d 576; *Bradford v. State*, 170 Tex.Cr.R. 530, 342 S.W.2d 319.'

"The mere showing that an offense occurred is not sufficient corroboration. *Windham v. State*, 479 S.W.2d 319 (Tex. Cr.App.1972); *Reynolds v. State*, 489 S.W.2d 866 (Tex.Cr.App.1972). The combined cumulative weight of the incriminating evidence furnished by the non-accomplice witnesses which tends to connect the accused with the commission of the offense supplies the test. *Perkins v. State*, 450 S.W.2d 855 (Tex.Cr.App.1970); *Windham v. State*, supra; *Colunga v. State*, 481 S.W.2d 866 (Tex.Cr.App.1972). It is not necessary that the corroboration directly link the accused to the crime or be sufficient in itself to establish guilt, *Attwood v. State*, 509 S.W.2d 342 (Tex. Cr.App.1974); *Reynolds v. State*, supra; *Rainey v. State*, 401 S.W.2d 606 (Tex.Cr. App.1966); it need only make the accomplice's testimony more likely than not. *Warren v. State*, 514 S.W.2d 458 (Tex.Cr. App.1974)."

The testimony and evidence other than that provided by Couling showed that appellant bought a station wagon in November with a check for which his account had insufficient funds. He executed a sixty day, interest bearing note for $5,650.00 to cover the check. Just before the note was due, the Water District board, whose president was appellant's father and got what he wanted on the board, approved a $5,650.00 check payable to BIHC. This check was deposited in the BIHC account on January 13 and on the same day appellant received a check from BIHC, signed by Couling, with the notation "one stationwagon" thereon, which was filled in with the amount of appellant's loan plus interest for the note for the station wagon. Appellant used this check on the same day to retire his note, one day before it was due. The station wagon never appeared on the Water District inventory and there was no evidence that Couling owed appellant a debt.

While this evidence does not directly link appellant to the offense committed, or even show that in fact a crime was committed, it meshes perfectly with the testimony of the accomplice witness Couling and makes that testimony more likely than not. The rela-tionship of the persons, the similarity of the amounts of money involved, and especially the timing of the events ties in appellant with the commission of the offense charged.

We therefore overrule this ground of error and find that the testimony of the accomplice witness Couling was sufficiently corroborated.

■ In his third ground of error, appellant alleges that the evidence was insufficient to establish that the Water District was unlawfully deprived of property in excess of two hundred dollars ($200.00), so as to constitute a felony offense. In support of this allegation, appellant seizes upon an equivocal answer to one question by witness Couling and chooses to ignore the remainder of his testimony and the other evidence presented.

The check which the Water District wrote to BIHC was in the amount of $5,625.00. Couling testified that BIHC did not perform any services to support the issuance of the invoices which appeared to be the basis for issuing the check and that BIHC did sell some equipment to the Water District but "not to the amount of that check." Implicit in Couling's testimony was that any legitimate transactions between the Water District and BIHC were handled separately and were divorced from the issuance of the $5,625.00 check. Immediately following the quoted answer, Couling testified as to appellant telling him that George Parr was going to give him a station wagon with the money therefor coming from the Water District and then he detailed the events surrounding his receiving and depositing the Water District check and the giving of the blank, signed check to appellant. Because of the timing of these events and the similarity of the amounts of money involved in these transactions, we find the jury was fully justified in believing that the check for $5,625.00 was not for payment for any services performed or equipment provided the Water District by BIHC.

This third ground of error is overruled.

■ It is appellant's next contention that the evidence was insufficient to establish that the property alleged in the indictment was taken without the consent of the Water District.

Article III, § 52(a) of the Texas Constitution provides, in part:

". . . the Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever . . . ."

The trial court received a stipulation that the Water District, at the time of the indictment, was a governmental agency, body politic and municipal corporation pursuant to Tex.Rev.Civ.Stat.Ann., Art. 8280–138, § 13 (1954).

It is thus apparent that the Water District board members did not have the authority to consent to the payment of money not made in return for goods or services. Inasmuch as the jury was fully justified in believing the testimony of Couling that the invoices acted upon by the Water District, if in fact there were invoices at all, were not for the performance of services or for goods received, then the action of the board in paying out the money was meaningless and amounted to no consent at all.

The capacity of the board members of the Water District in this regard is analogous to that of the capacity of a board of directors of a corporation. In *Parnell v. State*, 170 Tex.Cr.R. 30, 339 S.W.2d 49 (1959), cert. denied, 364 U.S. 828, 81 S.Ct. 66, 5 L.Ed.2d 55 (1960), an embezzlement case where a crucial element is that the money was taken without the consent of the owner, this court found that a majority on a board of directors of a corporation could be guilty of embezzling corporate funds. That is to say that their capacity to act was limited by the interests of the stockholders so that they could not consent on behalf of the corporation to the taking of the funds. In a similar case, *Lewallen v. State*, 166 Tex.Cr.R. 287, 313 S.W.2d 293 (1958), this court held that the directors of a corporation could not ratify embezzlement from the corporation by acquiescence.

We therefore find that the evidence was sufficient to establish that the property alleged in the indictment was taken without the consent of the Water District.

■ Further under this ground of error, appellant argues that if, as we have found, the Water District was precluded from consenting to the payment of the check to BIHC except for goods and services in return, then the State should not be allowed to rely on this theory of lack of consent because the State did not plead in the indictment that the Water District was a political corporation. Because this contention is similar to appellant's ground of error number seven, that ground of error will also be considered here. In ground of error seven, appellant alleges that the court's charge was fundamentally defective because it permitted a conviction on a theory not supported by the indictment, namely that the Water District was a political corporation which could not give valid consent to grant money to an individual unless given in payment for goods and services.

In *Meredith v. State*, 79 Tex.Cr.R. 277, 184 S.W. 204 (1916), the contention was made that the indictment was defective because it failed to allege that an insurance company was incorporated. This court held that because by statute only corporations can deal in the business of insurance in Texas, the allegation in the indictment that a company was doing business as an insurance company was equivalent to an allegation that the business was incorporated. The court went on to point out that the statute providing that only corporations can deal in the business of insurance in Texas was a general law and that all courts must take judicial cognizance of its provisions and further that Article 463 of the then current Code of Criminal Procedure (1895) provided that "matters of which judicial notice is taken need not be stated in an indictment."

In the present case, the Water District was properly identified in the indictment by

its statutory name and the trial court could have properly judicially noticed that it was a political corporation because it was so designated in a general law enacted by the Legislature. Appellant's contention would therefore be without merit because Article 21.18, V.A.C.C.P., provides that presumptions of law and matters of which judicial notice is taken need not be stated in an indictment. However, the trial court went further than merely taking judicial notice that the Water District was a political corporation, here the trial court received a stipulation setting forth that fact and the statutory basis therefor.

Under the circumstances, we find no error in the failure of the indictment to allege that the Water District was a political corporation and no error in the court's charge in this regard, and thus overrule appellant's fourth and seventh grounds of error.

In his fifth ground of error, appellant alleges that the court's charge was fundamentally defective because it permitted conviction on a theory not supported by the evidence, namely that appellant acted alone in the commission of the offense. The charge stated, inter alia;

"that . . . O. P. Carrillo, acting alone, or acting as a principal with D. C. Chapa, Jose Tovar and Rodolfo Couling, or with either of them. . . ."

At the outset, it must be noted that appellant does not claim that an objection was made to this portion of the charge and a review of the record reveals that no objection was made. That being the case, the test to be applied in considering this alleged error is whether the inclusion of this matter in the charge was calculated to injure the rights of appellant or if because of the inclusion of this matter appellant did not receive a fair and impartial trial. Articles 36.14 and 36.19, V.A.C.C.P.

The cases cited by appellant in support of his contention are readily distinguishable. In Dowden v. State, 537 S.W.2d 5 (Tex.Cr. App.1976), wherein appellant made a timely objection to the charge, this court found the charge to be defective because it authorized conviction for aggravated robbery if the

jury found that the appellant intentionally, knowingly, or recklessly placed the complainant in fear of imminent bodily injury or death, whereas the statutes did not authorize conviction where the defendant acted merely recklessly. In the case sub judice, appellant did not object to the charge and the charge permitted appellant to be found guilty of an offense as that offense is statutorily defined.

In Morter v. State, 551 S.W.2d 715 (Tex. Cr.App.1977), the indictment charged the causing of seriously bodily injury, but the charge allowed conviction also upon finding the causing of serious physical deficiency or impairment, or deformity. This court reversed because the conviction could have rested upon a finding of conduct not alleged in the indictment. Here the indictment merely alleged that appellant took money and this allegation was clearly sufficient to encompass the theories of taking asserted in the charge.

Savant v. State, 544 S.W.2d 408 (Tex.Cr. App.1976), is a case quite similar to the present case, with one important exception. In that case, the defendant and a friend were charged with assault by shooting the complainant with a pistol. The evidence clearly showed that the friend carried a pistol and shot the complaining witness, but the evidence was sufficient to convict the defendant as a principal. The charge authorized conviction if the defendant either acting alone or together with some other person or persons as a principal committed the offense. The defendant made a timely objection to the charge and this court reversed because the defective charge allowed a conviction if the defendant alone committed the offense, a theory not supported by the evidence. The important difference in that case and the case sub judice is that there the defendant objected in a timely manner and here appellant raised his objection for the first time on appeal.

Under our holding in Savant v. State, supra, had appellant objected to this portion of the charge and the court had gone ahead and charged as it did, we would be con-

strained to find reversible error. However, appellant did not object and thereby call this error to the court's attention as required by Article 36.14, V.A.C.C.P., and we do not find the error to be of such a fundamental nature as to require reversal. See and cf. Article 36.19, V.A.C.C.P.

■ The evidence was abundantly clear that appellant did not act alone in the commission of the offense and thus the jury could not have been misled by the inclusion of these three words ("acting alone, or") in a lengthy, eight-page charge. We find no indication whatsoever that these words were placed in the charge so as to injure the rights of the accused nor do we find from the record that appellant did not have a fair and impartial trial. We therefore overrule this ground of error.

■ Appellant next alleges that the court's charge was fundamentally defective because it permitted a conviction on a theory not supported by the evidence, namely that appellant acted as a principal with D. C. Chapa or Jose Tovar in the commission of the offense. Appellant did make a timely objection to this portion of the court's charge.

The record reflects that D. C. Chapa and Jose Tovar were the president and secretary-treasurer, respectively, of the Water District board and they signed the check received by Couling. D. C. Chapa was the father of appellant and had his way on the board. Both men were in a position to know which bills submitted to the board were valid and which were not. The $5,625.00 check issued to BIHC was based on fraudulent, or non-existent, invoices although BIHC had done some legitimate business with the Water District in the past. Appellant told Couling prior to the meeting of the board that George Parr was going to give him a station wagon and the check was going to come from the Water District.

Reasonable deductions from this evidence are that appellant was in collusion with the board members because he knew in advance they were going to get him a check to pay for his station wagon and that the board members by issuing a check to a company doing some legitimate business for the Water District could conceal the theft by "laundering" the funds through BIHC.

We find that the evidence and the reasonable deductions therefrom, when coupled with the exquisite timing involved in moving the money from the Water District to BIHC to appellant's bank in order to pay off his loan, constituted sufficient evidence to charge the jury that they could find that appellant acted as a principal with Chapa, Tovar and Couling, or either of them. Appellant's sixth ground of error is overruled.

■ In his eighth ground of error, appellant contends that the trial court reversibly erred in permitting the prosecutor to comment during final argument on the failure of appellant to testify. Appellant has no complaint with the words used by the prosecutor because he was merely reciting that portion of the charge concerning the failure of the defendant to testify as permitted by *Short v. State*, 511 S.W.2d 288 (Tex.Cr.App. 1974), cert. denied, 420 U.S. 930, 95 S.Ct. 1132, 43 L.Ed.2d 402 (1975); however, appellant complains that the prosecutor moved directly behind appellant while so doing, and this physical act coupled with the words being spoken were a comment on appellant's failure to testify.

The record reflects that appellant did not object when this alleged improper argument occurred. The prosecutor had finished his recitation on that point and had moved on to his next point as to the failure of appellant to call his father, D. C. Chapa, as a witness, when the counsel for appellant asked to approach the bench and the court thereupon announced that they would go into chambers. In chambers, appellant voiced his objection to the prosecutor's comment on the defense's failure to call D. C. Chapa as a witness and the merits of the objection were argued both by appellant and the State before the court overruled it. It was only then that appellant objected to the prosecutor commenting on the failure of appellant to testify.

In *Cain v. State*, 549 S.W.2d 707 (Tex.Cr. App.1977), this court in overruling a ground of error alleging improper jury argument therein stated:

"An objection must be made as soon as the ground of objection becomes apparent. *Ford v. State*, 500 S.W.2d 827 (Tex. Cr.App.1973); *Compton v. State*, 500 S.W.2d 131 (Tex.Cr.App.1973); *Sierra v. State*, 482 S.W.2d 259 (Tex.Cr.App.1972). Objection to the argument must come at the time of argument if error is to be preserved. *Olson v. State*, 484 S.W.2d 756 (Tex.Cr.App.1972); *Joines v. State*, 482 S.W.2d 205 (Tex.Cr.App.1972); *Ricondo v. State*, 475 S.W.2d 793 (Tex.Cr.App. 1971). We observe that the prosecutor argued at some length along the lines now complained of before the first objection was interposed."

We therefore find that appellant has failed to preserve the error, if any, in the prosecutor's remarks and actions and this ground of error presents nothing for review.

■ We did, however, look to the record in the interests of justice and did not find that the prosecutor's remarks coupled with his physical acts amounted to a comment on appellant's failure to testify. The prosecutor talked both from a podium and while he moved about the room during the course of his argument. While all agree that he was somewhere behind appellant for at least a portion of the time he was reciting from the court's charge, there were no gestures whatsoever toward the appellant. To paraphrase the test we laid down in *Bird v. State*, 527 S.W.2d 891 (Tex.Cr.App.1975), we do not find the actions of the prosecutor were manifestly intended or were of such character that the jury would naturally and necessarily take them to be a comment on the accused's failure to testify. Appellant also apparently did not view the event in that light when it occurred because objection was not voiced until sometime later.

We therefore overrule this ground of error.

Appellant next contends that the trial court erred in permitting the prosecutor to comment during final argument on the failure of appellant to call D. C. Chapa as a witness when the prosecutor knew that D. C. Chapa was unavailable as a witness because he would have invoked his Fifth Amendment privilege against self-incrimination.

■ It is of course the general rule that the State may comment in argument on the failure of a defendant to call competent and material witnesses and may also argue that the reason for such failure is that any such testimony would be unfavorable to his defense. *Torres v. State*, 552 S.W.2d 821 (Tex.Cr.App.1977) (failure to call sister); *Fisher v. State*, 511 S.W.2d 506 (Tex.Cr. App.1974) (failure to call wife); *Winkle v. State*, 506 S.W.2d 891 (Tex.Cr.App.1974), cert. denied, 419 U.S. 843, 95 S.Ct. 75, 42 L.Ed.2d 71 (failure to call co-defendant); *Rodgers v. State*, 486 S.W.2d 794 (Tex.Cr. App.1972) (failure to call man whom appellant claimed committed the offense).

■ Appellant argues that the general rule does not apply here because D. C. Chapa would invoke the Fifth Amendment if called by either side, and the State knew this, therefore Chapa was unavailable and incompetent as a witness. We do not reach that question here, however, because we find no evidence to support the contention that Chapa would invoke the Fifth Amendment if called by the defense.

The record shows that just prior to the State resting its case there was a meeting in chambers, only a portion of which was recorded, wherein it was apparently discussed whether the State would be permitted to comment that Chapa had invoked the Fifth Amendment before the Judicial Qualifications Committee if counsel for the defendant brought up in his argument that the State had not called D. C. Chapa as a witness. A telephone call was placed to Roy Barrera, who apparently was D. C. Chapa's attorney, and the court later announced that a Terry McDonald, not otherwise identified, had advised that if Chapa were called to testify in this trial he would invoke the Fifth Amendment.

While this transaction may be some indication that Chapa would have invoked the Fifth Amendment the privilege is a personal one and must be invoked by the individual who claims it, and not his attorney. Since there was no evidence that D. C. Chapa was incompetent or unavailable as a witness, we find no error in the State's commenting on the defense's failure to call him as a witness and thus overrule appellant's ninth ground of error.

In his tenth ground of error, appellant complains that the prosecutor erred in commenting during his final argument on the effect of the law of parole.

The court's charge to the jury on punishment included the instruction, "You are not to discuss among yourselves how long the accused will be required to serve the sentence you decide to impose. Such matters come within the exclusive jurisdiction of the Board of Pardons and Paroles and are of no concern to the jury." During his final argument at the punishment stage, the prosecutor stated to the jury, "It is our recommendation . . . that you all use this first form of verdict and that you write in ten years and that means that he will be sentenced to the Texas Department of Corrections in Huntsville for so long as the Board of Pardons and Paroles . . . ." Appellant objected to the argument at that point and the prosecutor stated to the court that he was going to refer the jury to the court's instruction at the time he was interrupted. The court accepted the prosecutor's explanation, overruled the objection, and denied the subsequent motion for mistrial.

While argument urging the jury to apply the parole law in determining a sentence is erroneous, *Clanton v. State*, 528 S.W.2d 250 (Tex.Cr.App.1975); *Jones v. State*, 522 S.W.2d 225 (Tex.Cr.App.1975); *Marshburn v. State*, 522 S.W.2d 900 (Tex. Cr.App.1975), we do not find here that the prosecutor reached that point. It does appear that the prosecutor may well have been heading in that direction before the timely objection of appellant stopped him, but we do not care to speculate just what

the prosecutor was going to say. We also note that the prosecutor when allowed to continue his argument properly paraphrased the court's charge to the jury regarding the sentence to be served. See *Campbell v. State*, 492 S.W.2d 956 (Tex.Cr. App.1973); *Sandlin v. State*, 477 S.W.2d 870 (Tex.Cr.App.1972). Under these circumstances, we overrule this ground of error.

In his eleventh ground of error, appellant argues that he was denied a fair and impartial trial because of jury misconduct in that during deliberations at the guilt-innocence stage of the trial the jurors discussed his failure to testify.

Issues of fact as to jury misconduct raised at a hearing on motion for new trial are for the determination of the trial court, and where there is conflicting evidence there is no abuse of discretion where the motion for new trial is overruled. The trial court is free to believe one juror's testimony as to the absence of improper conduct in the jury room and to disbelieve and reject all or part of the testimony of the other jurors. *McCartney v. State*, 542 S.W.2d 156 (Tex. Cr.App.1976). See *McMillon v. State*, 505 S.W.2d 872 (Tex.Cr.App.1974); *Powell v. State*, 502 S.W.2d 705 (Tex.Cr.App.1973); *Daniel v. State*, 486 S.W.2d 944 (Tex.Cr. App.1972).

Here the testimony of the jurors in this regard is in substantial conflict. Juror Ruiz testified that the jurors discussed appellant's failure to testify for quite some time and she told them they were not supposed to consider this. Juror Andrade stated that all jurors discussed the failure of appellant to testify and that the subject was mentioned twice despite an admonishment not to discuss this. Juror Kidd testified that the subject was brought up, but was dropped after admonishment and that the discussion was of no importance. Juror Reyna testified that he did not hear any such discussion. There was no testimony or indication that any juror based his or her verdict on the appellant's failure to take the stand.

In *Powell v. State*, 502 S.W.2d 705 (Tex.Cr.App.1973), this court quoted with approval the following language from *Byron v. State*, 154 Tex.Cr.R. 121, 225 S.W.2d 842 (1950):

"A casual reference by the jury, during deliberations, to the failure of the accused to testify does not vitiate the verdict. To constitute reversible error, such reference must amount to a discussion by the jurors or be used as a circumstance against the accused."

It is thus apparent that the trial court was free to believe jurors Kidd and Reyna that appellant's not testifying was only briefly considered, if at all, that the matter was promptly stopped by admonishment, and that the matter was of no significance. We therefore find no abuse of discretion in the court overruling the motion for a new trial.

Evidence adduced on appellant's motion for a new trial revealed that Celso Olivera, a friend of some members of the Carrillo family, but not a relative or ex-bodyguard, was arrested by federal agents in the hallway of the courthouse while the present trial was in progress. The jury was in the jury room with the door open at the time and one of the members of the jury may have seen Olivera being taken away in handcuffs. A male juror, never positively identified, later mentioned to some of the jurors that he had accidentally heard that a relative or ex-bodyguard of appellant had been arrested in or near the courthouse on a marihuana offense.

Appellant, citing Article 40.03, § 7, V.A.C.C.P.; *Rogers v. State*, 551 S.W.2d 369 (Tex.Cr.App.1977), and numerous other cases, argues in his twelfth ground of error that this constituted receipt of new evidence by the jury and mandates a new trial.

The cases cited by appellant, however, make it clear that the "new evidence" received by the jury must be damaging to the accused, either upon a critical issue of guilt or the reputation of the accused. In *Rogers v. State*, supra, a critical issue was the identification of the accused and the foreman assured the jury that a robbery victim never forgets the face of the robber. In *Jones v. State*, 122 Tex.Cr.R. 146, 54 S.W.2d 145 (1932), a prosecution for assault with intent to murder, a juror provided information that the defendant had been in fights and was dangerous. *Hill v. State*, 130 Tex.Cr.R. 585, 95 S.W.2d 106 (1936), involved a murder prosecution where a juror stated that the defendant's wife was not present because he had knocked her down and kicked her. In *McCoy v. State*, 113 Tex.Cr.R. 302, 21 S.W.2d 516 (1929), and *Autrey v. State*, 113 Tex.Cr.R. 567, 24 S.W.2d 432 (1930), cases with bootlegging charges, a juror in the first case commented that defendant's gas station was a suspicious place of hilarity and disorder frequented by drunks and in the latter case the jurors discussed that the defendant's wife had previously left him because he was a bootlegger. In *Cooper v. State*, 109 Tex.Cr.R. 650, 7 S.W.2d 85 (1928), a juror informed the others that the defendant and his family had been in trouble ever since he had known them. In *Durbin v. State*, 117 Tex.Cr.R. 177, 36 S.W.2d 730 (1931), the jury convicted the defendant of manufacturing whiskey after discussing that he and his family had done nothing all year but make whiskey and trouble.

*May v. State*, 151 Tex.Cr.R. 534, 209 S.W.2d 606 (1948), is more analogous to the case presented here. In that case, there was no evidence before the jury from the witness stand of other offenses having been committed in the county, but the jury in assessing punishment discussed that there had been numerous other crimes in the community. This court there stated:

"To what extent, if any, the fact that crimes committed by other parties affected the jury in the amount of punishment assessed against appellant is of course speculative, but under the law a reversal is demanded where evidence comes before the jury as here shown, and in the absence of a showing that no injury to appellant resulted."

Here we need not speculate as to whether this information was damaging to appellant or how this information affected the jury.

Although juror Ruiz's affidavit in support of the motion for new trial indicates that this information was one factor in deciding whether to place appellant on probation or send him to the penitentiary, her testimony and that of the other jurors testifying clearly revealed that the discussion of the information was brief, was of no significance, and did not affect their decision.

Under these circumstances, we find no error and overrule appellant's twelfth ground of error.

In the thirteenth ground of error it is contended that "appellant was denied a fair and impartial trial due to misconduct of the jury during deliberations at the punishment stage in discussing the effect of the law of parole."

It is here observed that the issue of probation and possible conditions of probation were submitted to the jury at the penalty stage of the trial. The court also instructed the jurors they were not to discuss how long the appellant may have to serve any sentence imposed as that was a matter for the Governor and the Board of Pardons and Paroles. At the hearing on the motion for new trial many of the jurors used the terms "probation" and "parole" interchangeably or in the same sense, displaying some confusion, but frequently the way in which the questions addressed to them were phrased added to the confusion.

Juror Ruiz testified that there was a statement from someone that even though appellant would get a certain number of years, his attorneys would continue to fight to get him probation. She also testified that she wanted to give fewer years than the punishment advocated by other jurors but it was explained to her by the foreman that if appellant behaved well in the penitentiary he would get out sooner. The statement did not cite any specific number of years but just that he would not have to serve all the time the jury gave him. She did testify that the mention of parole caused her to change her mind about what was proper for punishment.

Juror Andrade testified that someone stated that if appellant went to prison he would eventually get "probation," but there was no mention that his lawyers would get him probation after trial. Someone mentioned that appellant would not have to serve his full term because of the law of probation or parole.

Juror Kidd stated that there was no discussion about what would happen if appellant were given a certain number of years because there was no way of knowing how long he would have to serve. He testified that as far as the parole law was concerned, the jury read the charge and the conditions of "parole" [2] were listed on the charge.

Juror Reyna testified that there were jurors who wanted to give appellant "parole" and others who did not. It was later clarified that the juror had reference to probation, not parole. As for the range of punishment, he said that at first some wanted to give appellant probation but later the punishment in the jury's view ranged from two to five years. He did hear some mention of the law of parole, but he did not recall any statement that no matter what term was given appellant he would not have to serve at all.

The evidence shows at best that the jurors mentioned that which is common knowledge about the law of parole; i. e., some inmates of the Texas Department of Corrections are released prior to serving their full term, especially if they behave well in the penitentiary. No juror professed to know the law of parole and none misstated the law to the others. Such conduct on the part of the jury does not constitute receipt of additional evidence so as to require reversal under Article 40.03, § 7, V.A.C.C.P., and, although mentioning the parole law constitutes jury misconduct, here it was not such misconduct as to deny appellant a fair and impartial trial. *Ashabranner v. State*, 557 S.W.2d 774 (Tex.Cr. App.1977); *McCartney v. State*, supra; *Heredia v. State*, 528 S.W.2d 847 (Tex.Cr.App. 1975).

2. The only conditions found in the court's charge were the conditions of probation.

■ Appellant next complains that the trial court erred in permitting the accomplice witness Couling to testify that during the time he operated his store he paid hundreds of thousands of dollars to members of the Carrillo family, as such constituted evidence of extraneous offenses not shown to be connected directly to appellant. This ground of error is without merit.

Couling testified on direct examination that he had two silent partners in BIHC, Ramiro Carrillo and the appellant. On cross-examination, Couling's testimony as to the partnership was attacked by showing that Couling listed BIHC as a sole proprietorship when opening a bank account, applying for a State license to do business, and filing income tax, and that when he sold BIHC to another no proceeds were delivered to Ramiro Carrillo or appellant. On re-direct examination, the prosecutor was permitted to ask how much money he had paid to the Carrillos during the existence of the partnership out of the proceeds of BIHC. His response of "over hundreds of thousands" of dollars was no evidence of extraneous offenses, only that a partnership existed.

Appellant's ground of error number fourteen is therefore overruled.

■ In his fifteenth ground of error, appellant contends that the court erred in permitting a character witness against appellant to testify that he was an investigator for the Organized Crime Division of the Attorney General's office. It is appellant's contention that this testimony created the prejudicial and impermissible inference that appellant was in some manner connected with organized crime when there had been no such evidence.

We overrule this contention and find that the information was received by the court as the result of proper preliminary inquiry into the background of the witness so as to allow the jury to assess the weight to be given his testimony and to evaluate his credibility. *Elam v. State,* 518 S.W.2d 367 (Tex.Cr.App.1975). See *Watson v. State,* 488 S.W.2d 816 (Tex.Cr.App.1972); *Winkle v. State,* 488 S.W.2d 798 (Tex.Cr.App.1972).

See also *Ellis v. State,* 543 S.W.2d 135 (Tex. Cr.App.1976); and *Stein v. State,* 514 S.W.2d 927 (Tex.Cr.App.1974), where a juvenile officer and probation officer, respectively, were found to be proper character witnesses against the appellants in those cases.

This ground of error is overruled.

■ Appellant's sixteenth ground of error alleges that the trial court erred in refusing to permit appellant to cross-examine the accomplice Couling concerning the details of his pending indictments to demonstrate to the jury his bias, interest and motive for testifying against appellant.

The record reflects that Couling had five pending indictments alleging offenses totally unrelated to the offense of theft alleged in this case against the appellant. The five indictments alleged misuse of three credit cards from the Benavides Independent School District and two thefts therefrom. Couling had not been indicted in the theft alleged here and did not expect to be so indicted. Couling had an agreement with the State that upon his plea of guilty to one indictment, the State would recommend probation and dismissal of the other four. All of this information was fully brought out in front of the jury for their consideration.

However, appellant sought to go further and have Couling tell the jury whether the allegations in the five indictments were true and whether Couling was guilty of the offenses alleged in the five indictments. At a hearing outside the presence of the jury, Couling exercised his Fifth Amendment rights and refused to answer whether he was guilty of the offenses alleged and whether he had done the acts alleged in the indictments.

This court has always allowed a defendant great latitude in showing facts which would tend to establish ill feelings, bias, motive and animus upon the part of any witness testifying against him. *Castro v. State,* 562 S.W.2d 252 (Tex.Cr.App.1978); *Simmons v. State,* 548 S.W.2d 386 (Tex.Cr. App.1977); *Evans v. State,* 519 S.W.2d 868

(Tex.Cr.App.1975); *Smith v. State*, 516 S.W.2d 415 (Tex.Cr.App.1974).

In *Castro v. State*, supra, we reversed because the defense was not allowed to show that a witness had been arrested as a participant in the robbery and murder and had been formally charged with an offense arising out of the same transaction, but no charges were pending at the time of trial.

In *Simmons v. State*, supra, we held that a defendant has a right to cross-examine a prosecution witness as to charges against him which have been dismissed prior to his testifying in another criminal prosecution, as well as to those charges pending against him at the time he testifies for the State.

We reversed the conviction in *Evans v. State*, supra, where the trial court refused to allow appellant to show that a witness testifying for the State was currently under indictment.

In *Smith v. State*, supra, we stated, "the mere fact of an arrest or indictment of a witness is not normally admissible for impeachment purposes to show bias, motive, ill feelings or animus (footnote omitted), where the evidence of an arrest or legal accusation arises out of the same transaction for which the defendant is on trial, it may be admissible as such impeachment of the witness."

However, appellant has cited no cases, and we know of none, which would broaden this impeachment concept to permit a defendant to exact a judicial confession of guilt from a witness as a price for testifying for the State against him. We decline to so hold and thus overrule this ground of error.

■ Appellant's seventeenth and eighteenth grounds of error relate to the introduction of two monthly bank statements of appellant. Appellant alleges that the proper predicate was not laid to bring them within the business records exception to the hearsay rule.

We find these grounds of error to be without merit and therefore overrule them. The custodian of the records for the bank testified in substance that these statements were made and maintained in the regular course of business, that his employees were required to accurately record on these statements all transactions as they occurred, and that the information was recorded each day. The requirements of Article 3737e, V.A.C.S., have been fulfilled, and the records were admissible.

■ Appellant next alleges, in his nineteenth ground of error, that the trial court erred in refusing to set aside the indictment for the reason that the jury commissioners intentionally and systematically excluded persons from the grand jury who shared the same political affiliation as appellant, thereby producing an invidious discrimination based upon political affiliation and denying to appellant due process and equal protection of the law under the Constitutions of the United States and of the State of Texas. The substance of this ground of error is appellant's contention that there existed in Duval County a "Carrillo political party" and that members of that party were intentionally and systematically excluded by the jury commissioners from the grand jury which indicted him.

Assuming arguendo that a local political party in a sparsely populated county is a distinct class entitled to protection, we find that appellant has failed to reach either step in the two step test to prove a prima facie case of discrimination in the selection of a grand jury. That two step test was laid down by the U. S. Supreme Court in *Castaneda v. Partida*, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977), wherein the Court stated:

"Thus, in order to show that an equal protection violation has occurred in the context of grand jury selection, the defendant must show that the procedure employed resulted in substantial underrepresentation of his race or of the identifiable group to which he belongs. The first step is to establish that the group is one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied. *Hernandez v. Texas*, 347 U.S. [475], at 478–479, 74 S.Ct. [667], at 670–671, 98 L.Ed.

**918**

866. Next, the degree of under-representation must be proved, by comparing the proportion of the group in the total population to the proportion called to serve as grand jurors, over a significant period of time."

In support of this theory that the Carrillo Party was a recognizable, distinct class in Duval County at the time the grand jury was selected, appellant, two of his brothers, and one of the brother's girlfriend (all of whom were indicted for various and sundry offenses by this grand jury) testified that such a party existed. Their testimony at best shows that the Carrillo family broke away from the ruling Parr family and commenced their own "party" in April, 1975, some seven or eight months before they were indicted. Two candidates in local school board elections held just prior to trial testified that they were supported in the election by the Carrillos.

The overwhelming preponderance of the evidence, however, showed no discernible class of persons who could be identified as the "Carrillo Party." Most of those testifying stated that they were unaware of the existence of such a group and those who had heard of it felt it was just composed of the members of the Carrillo family.

That appellant failed in the second step of the *Castaneda v. Partida*, supra, test is readily apparent. There was no evidence, and indeed there could not be any, that underrepresentation on the grand jury had occurred over a significant period of time. If it is accepted as fact that the Carrillo Party came into existence in April, 1975, as appellant testified, then this is the first grand jury to sit since the party was formed. In fact, the last grand jury to sit before this one was selected by a commission appointed by appellant before he was impeached as district judge.

This ground of error is overruled.

In grounds of error twenty and twenty-one, appellant complains that the trial court erred in refusing to set aside the indictment because two jury commissioners selected prospective grand jurors with the view that those selected would return an indictment against appellant.

We find no evidence to support such contentions. One of the commissioners had sat on the grand jury which had indicted appellant in the 1950's and was the brother-in-law of the accomplice witness Couling, and the other commissioner was friendly with the Parr family, had socialized with the Texas Rangers in the area, and had appointed her husband on the grand jury panel but he was later disqualified because he had participated in an investigation for the State into criminal activities in Duval County. Appellant, citing *Long v. State*, 170 Tex.Cr.R. 262, 340 S.W.2d 58 (1960), argues that this court must assume from the circumstances that these commissioners selected only grand jury candidates who would indict appellant. As evidenced by the following quote from *Long v. State*, supra, the facts here fall far short of the situation condemned therein:

". . . It was established that the then-existing grand jury in the 30th Judicial District of the same county had deliberated on the charge against appellant, as well as two or three others, and had returned no bills. Following this, the jury commission, which appointed the grand jury who returned the instant indictment, was appointed. A member of such jury commission talked to 'two or three' prospective grand jurors and had his business partner, who was 'concerned' about the failure of the 30th District grand jury to indict appellant and others, talk to two other prospective grand jurors. It is these conversations which have caused us deep concern. In each of them the man who later became a grand juror was asked, when being approached by the jury commissioner and his partner, about whether or not he would be willing to serve, why a new grand jury was needed when one was already in existence, and in each case the prospective grand juror was informed that the existing grand jury had refused to indict appellant. It was after this information was given the prospective grand juror that he agreed to serve if selected and did in fact serve. . . ."

Here the grand jurors suggested by these two jury commissioners and made a part of the grand jury panel by the grand jury commissioners testified at length. There was no evidence at all that they were prone to return an indictment against appellant, that they had been approached by anyone concerning the need to indict appellant, or that they acted improperly in any way.

These grounds of error are therefore overruled.

The judgment is affirmed.