Gerald REESE, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–93–00146–CR.

Court of Appeals of Texas,
Texarkana.

Submitted June 23, 1995.

Decided July 7, 1995.

**634**

Charles Freeman, Houston, for appellant.

James H. Elliott, Asst. Dist. Atty., Texarkana, for State.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Chief Justice.

Gerald Reese appeals from his conviction for aggravated possession of cocaine and for violation of the Controlled Substances Act. He contends that the evidence is insufficient to support the jury's finding that enhanced his punishment, that he received ineffective assistance of counsel, that the trial court erred by refusing to rule on motions to recuse and by denying a motion objecting to his assignment, and that multiple errors were made in connection with a *Batson* hearing. Reese also contends that the court erred by denying him an evidentiary hearing on his motion for new trial and by overruling his motion to suppress.

Reese was arrested after a search of his motel room revealed a large amount of cocaine. Officer Thedford White conducted the search pursuant to a warrant based on a tip from an informant. The cocaine was located at different places in the room, the largest amount being in Reese's suitcase. A chemist testified that the total weight of the narcotics was 994.75 grams, with a purity of 59%. Six hundred grams were pure cocaine.

In a jury trial, Reese was found guilty of aggravated possession of a controlled substance and violation of the Controlled Substances Act. The jury assessed his punishment at life imprisonment and a $250,000.00 fine on the aggravated possession charge and twenty years' imprisonment, a $10,000.00 fine, and a tax penalty of $198,950.00 on the tax violation.

Reese first contends that the evidence was insufficient to support the jury's finding of true to the enhancement allegation. The enhancement paragraph of the indictment alleged that Reese had previously been convicted in the *104th* District Court of Harris County, while the pen packet introduced to support the allegation shows that Reese was convicted in the 184th District Court of Harris County. Although the number does not match the one contained in the indictment, the cause number (527241) is identical, as is the date of sentencing and the type of offense.

Prior convictions to enhance punishment need not be alleged with the same particularity as that required for charging the original offense. *Cole v. State,* 611 S.W.2d 79 (Tex.Crim.App. [Panel Op.] 1981);

*Stewart v. State,* 856 S.W.2d 567, 570 (Tex. App.—Beaumont 1993, no pet.). A variance between an allegation and proof is material and fatal only if it would mislead a defendant to his prejudice. *Hall v. State,* 619 S.W.2d 156 (Tex.Crim.App. [Panel Op.] 1980); *Stewart v. State,* 856 S.W.2d 567. We must therefore determine whether or not Reese was misled to his detriment by the variance.

Even though the enhancement allegation incorrectly stated the number of the convicting court, the presence of the other correct details provided Reese with adequate notice of his prior conviction. The variance between the indictment and the proof was not material or fatal in light of the otherwise precise correlation between the pen packet and the identifying information stated within the indictment. Reese has not alleged that he was in any way surprised by this variance. In the absence of surprise, a variance is neither fatal nor material. *Freda v. State,* 704 S.W.2d 41, 42–43 (Tex.Crim.App.1986); *Tenner v. State,* 850 S.W.2d 818 (Tex.App.— El Paso 1993, no pet.). Reversible error has not been shown.

■ Reese also contends that there was insufficient proof of the prior conviction. The pen packet recording the final conviction was properly entered into evidence without objection. This form of proof, when combined with proof that Reese was the person previously convicted, constitutes sufficient evidence to support the finding. *Beck v. State,* 719 S.W.2d 205 (Tex.Crim.App.1986); *Wilson v. State,* 671 S.W.2d 524 (Tex.Crim. App.1984).

■ Reese next contends that he received ineffective assistance of counsel, both at the guilt/innocence stage and at the punishment stage. In determining whether counsel was effective, we look at the trial as a whole and not at isolated incidents. *Moore v. State,* 694 S.W.2d 528 (Tex.Crim.App. 1985). The effectiveness of counsel—retained or appointed—is judged by a single standard: reasonably effective assistance. *Ex parte Gallegos,* 511 S.W.2d 510 (Tex. Crim.App.1974). In reviewing claims of a denial of the constitutional right to effective assistance of counsel, we apply the two-part test set forth in *Strickland v. Washington,*

466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *Butler v. State,* 716 S.W.2d 48, 54 (Tex.Crim.App.1986). The *Strickland* test requires an accused to show that his counsel's representation fell below an objective standard of reasonableness and that the deficient performance prejudiced his defense. In meeting the second criterion, the accused must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Ex parte Wilson,* 724 S.W.2d 72 (Tex.Crim.App.1987).

■ Reese complains about his retained co-counsel's representation in several specifics. He contends that they:

(1) were ineffective because they failed to timely and properly file a motion for continuance, thus eliminating the possibility of securing a witness;

(2) failed to comply with the ten-day notice requirement of Tex.R.Civ.P. 18a in objecting to the assigned judge and moving for recusal, thus waiving their contention and barring a complaint on appeal;

(3) failed to object to the court's holding a hearing on the *Batson* issue in chambers rather than open court without Reese's personal presence;

(4) did not object to the prosecutor's final argument that emphasized the name of a witness who allegedly rented the room but was not called as a witness by the defense;

(5) mentioned in the jury argument the possibility that Reese would go to prison; and

(6) allowed, without objection, the prosecutor to criticize Reese for complaining about violations of his constitutional rights.

We first address the motions for continuance. Counsel filed three separate motions for continuance on October 14, October 19, and October 20. Reese first states that these motions were defective because they were not sworn. All motions for continuance must be sworn to by a person having personal knowledge of the facts relied on for the continuance. Tex.Code Crim.Proc.Ann. art. 29.08 (Vernon 1989). The first motion for

continuance does not contain language swearing to the stated facts. The second motion does contain such a verification signed by Reese. The third motion is also sworn.

The motions were made for two reasons: so that newly retained counsel could familiarize himself with the case before trial, and because additional time was needed to serve subpoenas on two potential defense witnesses. Although the initial motion does not specify who the witnesses are or the type of testimony they would be expected to give, the request for subpoena was filed on that same day.

When the request for subpoena was made on October 14, trial was set for October 19. Reese correctly notes that the first motion was wholly defective because it did not contain the requisite items set out in TEX.CODE CRIM.PROC.ANN. art. 29.06 (Vernon 1989). That article provides that a motion for continuance based on the absence of a witness must state the name of the witness and his residence, or that his residence is not known; facts setting forth the diligence that has been used to procure attendance;[1] the facts that are expected to be proved by the witness; that the witness is not absent by the procurement or consent of the defendant; and that the motion is not made for delay. None of these items was in the initial motion, and most of them were not in the two subsequent motions. The motions were therefore inadequate.

■ Reese next contends that his counsel was ineffective because the pretrial motions objecting to the assigned judge and demanding recusal were predicated on the civil peremptory strike provisions of TEX.GOV'T CODE ANN. § 74.053(d) (Vernon Supp.1995). Trial counsel's effort to strike the appointed judge based on this section reflects a misunderstanding of the character of the remedy as set forth in detail at *Lanford v. Fourteenth Court of Appeals*, 847 S.W.2d 581, 584–85 (Tex.Crim.App.1993). The Court of Criminal Appeals has held that the recusal statutes must be read in conjunction with TEX. R.CIV.P. 18a in criminal prosecutions in which a party wishes to recuse the trial judge. *DeBlanc v. State*, 799 S.W.2d 701, 705 (Tex.Crim.App.1990). That rule provides that any such motion must be filed at least ten days before the date of trial. A failure to comply with this provision bars complaint on appeal of the denial of a separate hearing before another judge on the motion to recuse. *Arnold v. State*, 853 S.W.2d 543, 544 (Tex.Crim.App.1993); *DeBlanc v. State*, 799 S.W.2d at 705. The motions were not timely.[2] The motion for recusal was therefore defective on both of its stated grounds for relief.

■ Reese next complains because trial counsel did not object to the court's hearing his *Batson* motion in chambers rather than open court. Arguably, this procedure violated TEX.CODE CRIM.PROC.ANN. art. 1.24 (Vernon 1977), which requires that proceedings and trials in all courts shall be public. The prosecutor also failed to object to this procedure. *Salazar v. State*, 795 S.W.2d 187 (Tex. Crim.App.1990). In the absence of any objection to this procedure, a claim of error based upon this defective procedure has not been preserved for appellate review. TEX. R.APP.P. 52. The failure to object could, however, be considered an error of counsel.

■ Reese also claims ineffective assistance because counsel failed to object to several improper arguments by the prosecutor. To fall within the realm of proper jury argument, the argument must constitute a summation of the evidence presented, reasonable deductions drawn from the evidence, answers to opposing counsel's argument, or a plea for law enforcement. *Albiar v. State*, 739 S.W.2d 360, 362 (Tex.Crim.App.1987).

■ Reese first complains about the failure to object to the following argument:

They've got your minds running down rabbit trails, perhaps, at least they hope so.

---

1. The article specifically provides that the mere request for a subpoena to be issued (or its actual issuance) is not to be considered sufficient diligence.

2. This requirement is read into the mandatory language of TEX.GOV'T CODE ANN. § 74.059(c)(3) (Vernon 1988), which requires that a judge facing a recusal motion have the issue heard by a different judge.

Shirley Kelly got the room. Well, where's Shirley Kelly? Do you remember me saying in voir dire that they had the same subpoena power that we do? They can get anybody up here to testify that they want to.

The evidence showed that the room was originally rented in the name of Shirley Kelly. Counsel had a subpoena issued to Kelly, providing an address for service, five days before trial, but she did not appear. Generally, the State can properly comment on a defendant's failure to call competent and material witnesses. It can also argue that the reason for such failure is that any such testimony would be unfavorable to the accused. *Carrillo v. State,* 566 S.W.2d 902, 912–13 (Tex. Crim.App. [Panel Op.] 1978); *Rios v. State,* 857. S.W.2d 98, 101 (Tex.App.—Corpus Christi 1993, no pet.). Such a comment is not proper, however, when it is shown that the witness was not available to testify on behalf of the defendant. *Albiar v. State,* 739 S.W.2d at 362–63; *Carrillo v. State,* 566 S.W.2d at 913. There is no indication that this witness was unavailable other than her failure to be called at trial. *See Hendricks v. State,* 640 S.W.2d 932, 937 (Tex.Crim.App. [Panel Op.] 1982); *Rodgers v. State,* 486 S.W.2d 794, 797 (Tex.Crim.App.1972). Thus, as the record does not show that the witness was unavailable, the prosecutor's argument was not improper.

■ Reese also contends that his counsel conceded his case during argument by stating, "Here is a man going to the pen, and he could go to the pen for the rest of his life. Is that fair to him that a ghost sends him to the penitentiary?" Later, defense counsel continued by arguing, "And we're going to send an individual to the pen. And we are asking you not to send an individual to the pen because the gap needs to be closed and it was available."

Reviewing these statements in context, it appears that counsel was simply urging the jury to reflect on the gravity of its responsibility, i.e., to determine whether or not a man would be imprisoned. He then urged the jury not to find his client guilty because the State had failed to close the gaps in its case. Although not particularly well phrased in written form, presumably by proper emphasis this argument came over more clearly in oral argument. We do not find that counsel erred in this regard.

■ Reese also contends that counsel was ineffective for failing to object to the following argument by the prosecutor:

Ladies and gentlemen, at one point in the history of our country, it was said that the last refuge for a scoundrel was patriotism. Today in the area of narcotics, the last refuge for dope dealers is the Constitution. You have someone who brings a kilo of cocaine into your community and then stands up here and says, but my constitutional rights were violated. I can't find out who the informant was.

Reese argues that this constituted a comment on his failure to personally testify. We disagree. The comment is directed at Reese's efforts to discover the name of the informant. The argument does not constitute an attack or comment on Reese's failure to testify at trial.

Reese also complains that the prosecution was permitted to "elicit unlimited out-of-court statements made by a confidential informer on direct examination." This statement is incorrect. No such statement was elicited. The officer who obtained the search warrant merely stated that he had done so based on information obtained from a confidential informant. There was no error.

Reese further complains that a defense counsel was ineffective because he spent substantial time questioning the officer about the believability of the information obtained from the confidential informant. Counsel was trying to show that the confidential informant was also involved with drugs and thus was not believable, and also that the arresting officer had no reason to accept the informant's statement as correct. Counsel was also trying to show that there were additional factors at play that had not been revealed by the State and raise a reasonable doubt by pointing those out to the jury.

■ In a related argument, Reese suggests that counsel was ineffective because he failed to object to the introduction of the search warrant in evidence and the inculpato-

ry language taken from the informant that justified the warrant's issuance. He suggests that the decision that it would be admitted and the denial of Reese's motion to suppress occurred in a hearing outside the jury's presence. Since this occurred, he reasons, counsel made an unnecessary error by permitting its admission into evidence without complaint. Counsel at trial attacked everything about the warrant, including the reliability of the informant and the police department's alleged mishandling of its investigation and its failure to pursue alternative defendants. In order to attack the informant, counsel had to partially "open the door" and face the probability that the State would then introduce the warrant. This appears to have been a reasonable tactical decision by counsel and should not, by hindsight, be branded as error.

 Reese also suggests that trial counsel was ineffective for failing to object to a portion of the prosecutor's argument in which he placed the testifying police officers on pedestals and then pointed out their lack of any reason to lie about their observations at the time of the search. This argument was in large part a response to Reese's argument that the informant and the arresting officers were not believable. As such, it was not objectionable.

 Reese next contends that counsel was ineffective during the punishment phase of the trial. Specifically, he complains that final argument was ineffective because it occupies less than one-half of one page in the record. He argues that it was particularly ineffective because it immediately followed counsel's failure to object to the prosecutor's improper argument. In that argument the prosecutor invoked the "three strikes and you're out" metaphor and asked the jury to sentence Reese as a dope dealer who didn't care where his product was ultimately distributed.

> There is nothing more evil in this world than somebody who puts this on the street, because no dope dealer can tell you where it's ultimately going to wind up, whether somebody is going to change their mind,

say, I'm going to do this, and throw it in the street, or whether they're going to go sell it to a school child. No dope dealer thinks about that. Dope dealers don't care. How could you care about a human being and do something like this? You just can't.

This argument appears to be a reasonable deduction from the quantity of drugs Reese had when he was arrested. As such, it was not objectionable. In addition, brevity of argument does not show ineffectiveness. Sometimes it is very effective.

The first prong of *Strickland* requires the defendant to show that his representation fell below an objective standard of reasonableness. The conduct of the trial as a whole was professionally managed by counsel. The witnesses were adequately cross-examined and efforts were made to concentrate on the perceived failure of the State to prove specific portions of its case in an effort to raise reasonable doubt in the minds of the jurors as to Reese's guilt. Although defense counsel may have made some errors, we do not find that they were of such nature as to reduce the overall quality of the representation below an objective standard of reasonableness.

Even if the representation did fall below the standard, there is no showing that it prejudiced the defense. Reese's major contention, that his dispositive defense witness was not secured, is not supported by any showing of what the gist of her testimony would be or whether her testimony would benefit Reese in any way. Accordingly, he has not shown a reasonable probability that, but for counsel's errors, the result of this proceeding would have been different.

Reese next contends that the trial judge, Honorable Leon Pesek, erred by denying pretrial objections to his assignment as judge on the case and a motion for his recusal. As previously discussed, the motions were not timely filed under TEX.R.CIV.P. 18a, and any complaint on this ground has been waived.

Reese next contends that the trial court erred by holding a *Batson*[3] hearing in chambers rather than in open court. The Court of

---

**3.** *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

Criminal Appeals has held that a similar action constituted a violation of TEX.CODE CRIM.PROC.ANN. art. 1.24, which provides for public trial. *Houston Chronicle Pub. Co. v. Shaver,* 630 S.W.2d 927 (Tex.Crim.App.1982) (original proceeding). Reese argues that, like in the *Shaver* case, it is the functional equivalent of closing the courtroom to spectators and to him. The record does not reveal whether or not Reese was part of the group that went to the judge's chambers. In any event, however, error has not been shown because no objection was made to the procedure. In the absence of a timely objection, no error has been preserved for review. TEX.R.APP.P. 52.

▮ Reese next contends that the trial court erred by denying the *Batson* objection. He specifically complains because the State used one of its peremptory challenges to eliminate panel member 18, Vivian Crossey. The trial court found that the State offered race-neutral reasons for striking her. We must accept that finding unless we find it to be clearly erroneous. *Whitsey v. State,* 796 S.W.2d 707 (Tex.Crim.App.1989) (opinion on rehearing). Under that standard, we accept the trial court's account of the evidence if it is plausible in light of the record when viewed in its entirety. Moreover, because a determination of purposeful discrimination usually depends on an assessment of the credibility of the witnesses, the content of the explanation, and all other relevant facts and circumstances, the trial court's determination is entitled to great deference. *Alexander v. State,* 866 S.W.2d 1 (Tex.Crim.App.1993). The improper exclusion of even one member of the defendant's race for discriminatory reasons will invalidate the entire process. *Whitsey v. State, supra.*

▮ The prosecutor testified that he struck Crossey because she is the wife of a paralegal who works with a Texarkana attorney who is actively engaged in the practice of criminal defense law. Reese argues that because no individualized attention was paid to Crossey that would indicate the actual state of her mind, she was removed merely because she was part of a group that the prosecutor believed had a bias against law enforcement. This claim was involved in a very similar situation in *Whitsey,* 796 S.W.2d at 715–16.

In *Whitsey* the prosecutor challenged a black female who was married to a nurse. The prosecutor said he believed she would be a liberal juror because of her husband's occupation. As in the present case, however, he did not ask her any individual questions. As in *Whitsey,* the record of voir dire in this case is devoid of any testimony that would indicate that Crossey was biased. The *Whitsey* court described the situation as "a classic example of an explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically." *Whitsey v. State, supra (citing Keeton v. State,* 749 S.W.2d 861, 866 (Tex.Crim.App. 1988)).

In *Keeton,* the court stated several reasons that would weigh against the legitimacy of a race-neutral explanation in this kind of situation. Those reasons are (1) an explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically, and (2) no examination, or only a perfunctory examination, of the challenged juror. The remaining three factors are not applicable in this case. *Keeton v. State,* 749 S.W.2d at 866. There is no indication in this case that other potential jurors in the same situation were treated differently, nor does the record show that these reasons were contrived by the prosecutor after spending extensive time reviewing the voir dire transcript as in *Whitsey.*

Although some of the aggravating factors present in *Whitsey* do not appear in this case, the reasons for the strike and the position of the juror are essentially the same. We are, however, able to distinguish our case based on one important factor that is different from the *Whitsey* situation. In this case, the juror was married to someone intimately involved in the legal system. The prosecutor could well have feared this potential juror, not because of some perceived group bias but because of her familiarity with the legal system and the possibility that she would rely on her assumed knowledge about that system rather than on the evidence produced at the trial. We do not find that the trial court was

clearly wrong when it accepted the State's race-neutral reason for challenging Crossey.

 Reese next contends that the trial court erred by overruling his objection to ex parte instructions that were given to the presiding juror after the jury returned with an improper verdict. On the verdict form the jury answered the question on punishment "99 yrs-life." The trial court called the presiding juror forward for a discussion that was not recorded. Afterwards, the trial judge explained the problem. The court informed the jury that it could not give both ninety-nine years and life and sent it back to reconsider its verdict.

Reese relies on cases that involve fact situations different from the one here. The cases of *Smith v. State,* 513 S.W.2d 823, 829 (Tex.Crim.App.1974), *Brown v. State,* 505 S.W.2d 850 (Tex.Crim.App.1974), and *Adwon v. State,* 708 S.W.2d 564, 569 (Tex.App.— Houston [1st Dist.] 1986, no pet.), involved court instructions given in response to questions tendered by the jury. TEX.CODE CRIM. PROC.ANN. art. 36.27 (Vernon 1981) specifically provides that, when the jury communicates with the court by asking a question, the written instruction or answer to the communication shall be read in open court after the court has submitted the question and the proposed answer to the defendant or counsel.

If in this case a question had been asked by the jury, the court should have followed Article 36.27. But the court's action here was more in the nature of a direction to the jury to assess punishment in accordance with the guidelines of the charge already given, rather than an additional instruction. It does not fit within the provisions of Article 36.27. Nor does it exactly fit within TEX. CODE CRIM.PROC.ANN. art. 37.10 (Vernon Supp.1995),[4] relating to informal or unautho-

rized verdicts. Instead, the court simply instructed the jury to retire and reconsider the verdict because it did not comply with the punishment authorized for the offense. *See Williams v. State,* 750 S.W.2d 933, 935 (Tex. App.—Fort Worth 1988, no pet.); *see also Stilwell v. State,* 434 S.W.2d 861, 863 (Tex. Crim.App.1968). We conclude that, in this particular circumstance, the court's action was not error. *See, e.g., Reese v. State,* 773 S.W.2d 314 (Tex.Crim.App.1989). Even if the procedure constituted error, we cannot perceive that it harmed Reese in any way.

 Reese next contends that the trial court erred by refusing to rule on his motion for recusal that was filed by appellate counsel *after* the judgment of conviction was rendered. Reese was sentenced on October 20, 1993. The motion for recusal was filed on November 18, 1993. Reese's notice of appeal was filed on November 15, 1993. The motion was filed subsequent to his pro se motion for new trial and simultaneously with an amended notice of appeal and counsel's motion for new trial. TEX.R.CIV.P. 18a provides that, at least ten days before the date set for trial *or other hearing,* any party may file with the clerk of the court a motion stating grounds why the judge before whom the case is pending should not sit in the case. Here, no hearing was set on the motion for new trial.

 The State argues that TEX.GOV'T CODE ANN. § 74.053(d) does not apply in a criminal case, so there was no error. The motion for recusal here, however, was not one under Section 74.053(d), but under TEX. R.CIV.P. 18a. That rule applies to criminal cases as well as to civil cases. *Arnold v. State,* 853 S.W.2d 543 (Tex.Crim.App.1993).

---

4. TEX.CODE CRIM.PROC.ANN. art. 37.10 (Vernon Supp.1995) provides:

(a) If the verdict of the jury is informal, its attention shall be called to it, and with its consent the verdict may, under the direction of the court, be reduced to the proper form. If the jury refuses to have the verdict altered, it shall again retire to its room to deliberate, unless it manifestly appear[s] that the verdict is intended as an acquittal; and in that case, the judgment shall be rendered accordingly, discharging the defendant;

(b) If the jury assesses punishment in a case and in the verdict assesses both punishment that is authorized by law for the offense and punishment that is not authorized by law for the offense, the court shall reform the verdict to show the punishment authorized by law and to omit the punishment not authorized by law. If the trial court is required to reform a verdict under this subsection and fails to do so, the appellate court shall reform the verdict as provided by this subsection.

In a parallel situation in a civil case, we held that a motion filed more than ten days before a set hearing on a motion for new trial was timely. *CNA Ins. Co. v. Scheffey*, 828 S.W.2d 785, 793 (Tex.App.—Texarkana 1992, writ denied); *see DeBlanc v. State*, 799 S.W.2d at 705; *Crawford v. State*, 807 S.W.2d 597 (Tex.App.—Dallas 1991, no pet.). The Dallas Court of Appeals has held that the hearing on a motion for new trial must be heard only by an appointed judge after immediate referral under TEX.GOV'T CODE ANN. § 74.059 (Vernon 1988).

Reese's motion to recuse and disqualify is properly verified as required by Rule 18a, and specifically states the various disabilities which Reese contends would prevent either Judge Leon Pesek or Judge John Miller from sitting in this case. It was filed at least ten days before any hearing (since none was set), and the mandatory language of the rule requires the district judge to request the presiding judge to assign another judge to hear the motion relating to recusal. The judge did not do so here.

In an unpublished opinion, we construed the phrase "trial or other hearing" to mean the contemplated action to be taken by the judge who is challenged. That action in this case was the judge's ruling on Reese's motion for new trial. The court did not hold a hearing or act on the motion for new trial, but allowed it to be overruled by operation of law. For purposes of Rule 18a, we concluded that the time of overruling by operation of law was equivalent to a hearing on the motion. Since Reese's motion was filed more than ten days before that date, it was timely, and the judge should not have taken any other action in the case, except to refer the matter to the presiding judge as required by Rule 18a.

We therefore abated this cause so that the procedure mandated by Rule 18a could be followed. That has now been done. The Honorable F.L. Garrison was appointed to conduct a recusal hearing, and the record of that hearing is now before us. After taking testimony and hearing argument, Judge Garrison denied the motion to recuse, leaving Judge Pesek as the sitting judge over the case. As shown by our abatement, we agree that the failure to refer the matter to the presiding judge in a timely fashion was error. However, the procedure required by Rule 18a has now been followed, and the record supports Judge Garrison's denial of the recusal motion. Thus, the error has been cured and Reese has not been harmed.

We now address Reese's further argument that the trial court erred by failing to provide him with an evidentiary hearing on his motion for new trial.

██ The general rule is that it is in the trial court's discretion whether to hold a hearing on a motion for new trial. But when a defendant asserts reasonable grounds for relief that are not determinable from the record, he is entitled to a hearing so that he can fully develop the issues raised in his motion for new trial. *Jordan v. State*, 883 S.W.2d 664, 665 (Tex.Crim.App.1994) (citing *Trevino v. State*, 565 S.W.2d 938, 940 (Tex. Crim.App.1978)); *Reyes v. State*, 849 S.W.2d 812, 816 (Tex.Crim.App.1993).

██ The motion in this case, however, does not raise any grounds that would require the taking of evidence at a hearing. The allegations of ineffective assistance of counsel have previously been addressed and are adequately presented by the record. Allegations that errors were committed in the initial appointment of Judge Pesek to hear this case could likewise be shown by the record, but have not been raised as arguments on appeal. The complaints concerning the *Batson* hearing in chambers have been adequately preserved by the record, as are any complaints concerning trial counsel's failure to request additional instructions or object to the instructions presented to the jury in the charge. The contention that the presiding juror engaged in unauthorized communication with the trial court has also been preserved by the record for our review as previously discussed. The only remaining contention is:

> That evidence tending to establish the innocence of Accused, i.e., that the search warrant was a sham and pretext to seize and search Accused's person and property which resulted from skulduggery by the so-called Bi–State Narcotics Task Force

and that there really was no *reliable* informer, was intentionally withheld by the State and agents *for* the State preventing its production at trial.

This complaint seems to argue that the motion to suppress was incorrectly denied because the underlying search warrant was not based on appropriate grounds. Once again, this issue was fully argued in a motion to suppress and was also brought forward by counsel during trial.

We conclude that, in this situation, a hearing was not required. Thus, there was no need to refer the recusal question to the presiding judge, because no further hearing was held or necessary.

■ Reese next contends that the trial court erred by allowing his motion in arrest of judgment to be overruled by operation of law. The contention is based on the irregularity in the enhancement allegation stating the wrong number of the district court that previously convicted Reese. The court, however, was not required to hold a hearing on the motion, so error has not been shown.

■ Lastly, Reese contends that the trial court erred by overruling his motion to suppress the evidence seized from the motel room. He specifically complains of the admission of State's Exhibits 4, 5, and 7, consisting of a pager, a crack pipe, and a collection of receipts for a car phone and other documents and photographs discovered along with that item. The evidence shows that all of these items were discovered in plain view when the officers entered the room pursuant to a search warrant. The officer testified that such mobile communications equipment was normally carried by drug dealers. The evidence was admissible, and the trial court correctly overruled the motion to suppress.

The judgment of the trial court is affirmed.