Scott R. Runge v. Raytheon E-Systems, Inc.
















IN THE
TENTH COURT OF APPEALS
 

No. 10-00-013-CV

Â Â Â Â Â SCOTT R. RUNGE,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â v.

Â Â Â Â Â RAYTHEON E-SYSTEMS, INC.,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
 

From the 74th District Court
McLennan County, Texas
Trial Court # 98-4042-3
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
O P I N I O N
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â Scott Runge interviewed with Jim Jones and left his job in Houston after Jones offered him
a âcontract for lifeâ with Raytheon E-Systems, Inc. in Waco, Texas. Runge started work for
Raytheon in the early part of 1997. By October 1998, Raytheon terminated Rungeâs employment. 
Runge sued Raytheon for breach of contract and retaliation. Raytheon filed a motion for summary
judgment. The trial court granted Raytheonâs motion without specifically stating its reasons. In
four issues, Runge contends the trial court erred in: (1) upholding the defense of statute of frauds;
(2) determining no âcontract for lifeâ existed; (3) sustaining the defense of âat-willâ employment;
and (4) holding that retaliation did not occur or alternatively that it constituted no ground for
recovery. We affirm.
Summary Judgment
Â Â Â Â Â Â Raytheon filed what purports to be a dual motion for summary judgment; that is, one which
raises both no-evidence and traditional summary judgment claims. See Tex. R. Civ. P. 166a(c)
& (i). In support of its motion, Raytheon attached deposition testimony from Runge, an affidavit
from Marvis Hanchey, the Human Resources Manager for Raytheon, a copy of Rungeâs
employment application, a copy of a letter from Hanchey to Runge, and a copy of an employee
agreement signed by Runge. 
No-Evidence or Traditional Review
Â Â Â Â Â Â This Court has previously determined that a no-evidence summary judgment motion should
be made without presenting evidence to support the motion. Williams v. Bank One, N.A., 15
S.W.3d 110, 116 (Tex. App.âWaco 1999, no pet.); Ethridge v. Hamilton County Elec. Coop.
Assân, 995 S.W.2d 292, 295 (Tex. App.âWaco 1999, no pet.). This Court has also concluded
that both traditional and no-evidence summary judgment claims can be raised in a single motion
so long as the motion sufficiently segregates the traditional claims from the no-evidence claims. 
Torres v. City of Waco, 2001 Tex. App. Lexis 4459, *17, n. 7 (Waco June 27, 2001, no pet. h.);
see also Fletcher v. Edwards, 26 S.W.3d 66, 72, 78 (Tex. App.âWaco 2000, pet. denied). 
Â Â Â Â Â Â Raytheonâs motion for summary judgment does not sufficiently segregate the traditional claims
from the no-evidence claims. Therefore, we will examine the entire motion under the traditional
summary judgment standard of review.
Standard of Review
Â Â Â Â Â Â The standard of review for a traditional summary judgment is well established: (i) the movant
for summary judgment has the burden of showing there is no genuine issue of material fact and
is entitled to summary judgment as a matter of law; (ii) in deciding whether there is a disputed
material fact issue precluding summary judgment, evidence favorable to the non-movant will be
taken as true; and (iii) every reasonable inference must be indulged in favor of the non-movant and
any doubts resolved in its favor. Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985); Larsen v. Carlene Langford & Assocs., 41 S.W.3d 245, 248-249 (Tex.
App.âWaco 2001, pet. denied). The function of summary judgment is not to deprive litigants
of the right to trial by jury, but to eliminate patently unmeritorious claims and defenses. 
Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929, 931 (Tex. 1952).
Â Â Â Â Â Â For a defendant to prevail on summary judgment, it must show there is no genuine issue of
material fact concerning one or more essential elements of the plaintiff's cause of action or
establish each element of an affirmative defense as a matter of law. Black v. Victoria Lloyds Ins.
Co., 797 S.W.2d 20, 27 (Tex. 1990); Larsen, 41 S.W.3d at 249. If the defendant disproves an
element of the plaintiff's cause of action as a matter of law, summary judgment is appropriate. 
Friendswood Dev. Co. v. McDade & Co., 926 S.W.2d 280, 282 (Tex. 1996). When necessary
to establish a fact issue, the non-movant must present summary judgment evidence. Westland Oil
Dev. Corp. v. Gulf Oil Corp., 637 S.W.2d 903, 907 (Tex. 1982); Ethridge, 995 S.W.2d at 294.
Â Â Â Â Â Â "When the trial court does not specify the basis for its summary judgment, the appealing party
must show it is error to base it on any ground asserted in the motion." Star-Telegram, Inc. v.
Doe, 915 S.W.2d 471, 473 (Tex. 1995).
The Petition, Motion, and Response
Â Â Â Â Â Â Runge alleged two causes of action: breach of contract and âretaliationâ in his petition. 
Runge claimed he was offered a contract for life by Jim Jones, his future supervisor at Raytheon. 
Runge alleged he accepted that offer, and in consideration, quit a job of equal salary and moved
to Waco. He alleged as further consideration that Raytheon agreed to pay all relocation costs
including the loss on the sale of Rungeâs home in Houston and that Runge, as required, executed
a written contract stating that he would repay the relocation costs if he voluntarily left the
employment of Raytheon within one year. Runge claimed Raytheon terminated his employment
on October 8, 1998. Without waiving his breach of contract claim, Runge further alleged that he
was selected for termination in retaliation for questioning the quality of the paint used on the
projects to which he was assigned. He also made management aware of poisons being flushed
down the sewer in violation of OSHA and other environmental agency standards.
Â Â Â Â Â Â Raytheon filed a motion for summary judgment claiming it was entitled to summary judgment
on two grounds. First, it claimed (a) there was no specific and definite agreement to modify the
employment-at-will relationship between Runge and Raytheon, (b) Raytheon did not authorize
anyone to make an agreement with Runge, (c) Raytheon did not violate its policies in terminating
Runge, and (d) Raytheon did not retaliate against Runge for reporting complaints to his supervisor. 
Second, Raytheon maintained that Rungeâs claims were barred by the employment-at-will doctrine.
Â Â Â Â Â Â Runge responded that Raytheon made a specific agreement for a âjob for lifeâ through Jim
Jones. He ratified that agreement by becoming employed by Raytheon. He claimed he was not
an at-will employee. Runge also urged in his response that he was retaliated against and âfired
clearly and solely because he was raising issues that would cause management to be in trouble.â 
He asserted that his situation âfitâ into the Sabine Pilot


 exception to the employment-at-will
doctrine.
Breach of Contract
Â Â Â Â Â Â The essential elements in a suit for breach of contract are: (1) the existence of a valid contract;
(2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and
(4) that the plaintiff was damaged as a result of the breach. Southwell v. Univ. of Incarnate Word,
974 S.W.2d 351, 354-55 (Tex. App.âSan Antonio 1998, pet. denied); Hussong v. Schwan's Sales
Enterprises, Inc., 896 S.W.2d 320, 326 (Tex. App.âHouston [1st Dist.] 1995, no pet.). As
applied to this particular suit, the first element is the existence of a valid contract for life (which
would alter the employment-at-will relationship).
Â Â Â Â Â Â Raytheon contested the first element, whether there was a valid contract for life, in its motion
for summary judgment. Runge claimed he was not an at-will employee because he had an oral
contract for a âjob for life.â
Â Â Â Â Â Â As a general rule in Texas, "absent a specific agreement to the contrary, employment may be
terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all." 
Montgomery County Hosp. Dist. v. Brown, 965 S.W.2d 501, 502 (Tex. 1998). Such at-will
employment, however, may become contractual based on oral statements of those in authority. 
See id; Gilmartin v. Corpus Christi Broad. Co., 985 S.W.2d 553, 555 (Tex. App.âSan Antonio
1998, no pet.). For such a contract to exist, oral statements must show that the employer intends
to make a binding contract of employment; the employer must unequivocally indicate a definite
intent to be bound to not terminate the employee except in clearly specified circumstances. 
Brown, 965 S.W.2d at 502; Welch v. Doss Aviation, 978 S.W.2d 215, 220-21 (Tex.
App.âAmarillo 1998, no pet.). General comments will not suffice; an employee must reveal a
more formal agreement with the employer to modify at-will employment. See Brown, 965 S.W.2d
at 502; Gilmartin, 985 S.W.2d at 556.
The Evidence
Â Â Â Â Â Â Raytheon attached portions of Rungeâs deposition to its summary judgment motion. Runge
testified at the deposition that he was called by Jim Jones and asked to interview with Jones. 
Neither party disputes that Jim Jones worked for Raytheon. According to Runge, at the interview,
Jones told Runge that he had an âopportunity of a lifetimeâ and âa job for life.â Nothing more
specific was said. Runge did not verify this offer with anyone else and did not ask for it to be
reduced to writing. Raytheon also attached an affidavit of Marvis Hanchey, the human resources
manager, who stated that Runge was hired as an at-will employee and that Raytheon never
approved any agreement granting Runge a job for life. In support of Hancheyâs affidavit,
Raytheon attached Rungeâs employment application which he signed, stating he understood the
employment relationship to be at-will, and Rungeâs employment agreement which he also signed,
stating nothing in the agreement limited or restricted Raytheonâs right to terminate Rungeâs
employment at any time, with or without cause. In response, Runge reiterated he had been offered
a job for life, and he accepted that offer. The purported offer of a job for life was made prior to
Runge signing the employment application and employment agreement.
Application
Â Â Â Â Â Â Taking Rungeâs statements as true, that he was offered a contract for life, this offer was not
specific enough to alter the employment-at-will relationship between Runge and Raytheon.


 The
summary judgment evidence established Runge did not have a contract with Raytheon that altered
the at-will employment relationship. Thus, Raytheon presented summary judgment evidence that
negated an essential element of Rungeâs breach of contract claim. Runge failed to present some
evidence that would raise a fact issue on this element. Accordingly, summary judgment on the
breach of contract cause of action was proper.
Retaliation
Â Â Â Â Â Â A retaliation cause of action for a private employee requires a showing that the claimant (1)
is an employee-at-will, and (2) was terminated for refusing to perform an illegal act. Sabine Pilot
Service, Inc. v. Hauck, 687 S.W.2d 733, 735 (Tex. 1985); Simmons Airlines v. Lagrotte, No. 05-00-656-CV, 2001 Tex. App. Lexis 5268, *10 (Dallas August 3, 2001, no pet. h.). There is no
common-law cause of action, however, for a private employee who was discharged for reporting
illegal activities at the workplace. Austin v. Healthtrust, Inc., 967 S.W.2d 400, 403 (Tex. 1998);
Winters v. Houston Chronicle Publâg Co., 795 S.W.2d 723, 724-25 (Tex. 1990).
The Evidence
Â Â Â Â Â Â Excerpts from Rungeâs deposition revealed that he believed: (1) Raytheon was not following
their contract requirements, such as not conducting all performance tests of pretreatment and top
coat paint of Navy aircraft and using ânon-certifiableâ materials on a certified process; (2)
Raytheon was machining copper beryllium improperly and without a permit required by OSHA
and the EPA; and (3) Raytheon misplaced over 100 barrels of methylene chloride. According to
his deposition testimony, he reported all of these complaints to his superiors.
Application
Â Â Â Â Â Â Taken as true, Rungeâs statements do not reveal that he was terminated for refusing to
perform illegal activities. Even if these actions by Raytheon are illegal, the Supreme Court has
declined to extend the Sabine Pilot exception to the employment-at-will doctrine to those
individuals terminated from their jobs for reporting illegal activities. We likewise decline to
extend the exception. Thus, Raytheon presented summary judgment evidence that negated an
essential element of Rungeâs retaliation claim. Runge failed to present some evidence that would
raise a fact issue on this element. Accordingly, summary judgment was proper on Rungeâs
retaliation cause of action.
Conclusion
Â Â Â Â Â Â Because Raytheon negated essential elements of Rungeâs two causes of action, the disposition
of these issues forecloses the necessity of reviewing Rungeâs remaining issues. TheÂ judgment of
the trial court is affirmed.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â TOM GRAY
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Before Chief Justice Davis,
Â Â Â Â Â Â Justice Vance, and
Â Â Â Â Â Â Justice Gray
Â Â Â Â Â Â (Justice Vance concurring)
Affirmed
Opinion delivered and filed August 31, 2001
Publish



docnum=2&_startdoc=1&wchp=dGLbVtz-zSkAz&_md5=f78c2540d33c06ac5694a976e8b31380">Martinez v. State, 98 S.W.3d 189, 193 (Tex. Crim.
App. 2003); Tamez, 205 S.W.3d at 40.

Â 

EXCLUSION OF THE CONFESSION

   Johnson complains that a
sworn confession was excluded.Â  WallaceÂs notarized letter confession, however,
was admitted into evidence and read aloud to the jury during the StateÂs
cross-examination of Johnson.Â  This complaint presents nothing for our review.Â 
See Webb v. State, No.
12-07-00315-CR, 2008 Tex.
App. LEXIS 5718,Â at *5Â (Tex. App.ÂTyler July 31, 2008, pet. refÂd)
(not designated for publication).

COMPULSORY ATTENDANCE OF WITNESSES

Â Â Â Â Â Â Â Â Â Â Â  Johnson argues that he was
denied the right to compulsory attendance of witnesses because the trial court
failed to rule on his original and amended pro se motions to subpoena Wallace
and another witness.Â  Because Johnson was represented by counsel, the trial
court was not required to entertain these motions.Â  See Robinson v. State, 240 S.W.3d 919, 922 (Tex. Crim.
App. 2007).

DUE PROCESS

Â Â Â Â Â Â Â Â Â Â Â  Johnson maintains that the
investigation by police and the district attorneyÂs office violated due
process, as indicated by a police report that the State delayed disclosing in
violation of Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10
L. Ed. 2d 215 (1963).Â  This
report is not in the record; thus, we cannot determine whether a Brady
violation occurred.Â  See Carraway
v. State, 507 S.W.2d
761,Â 764Â (Tex. Crim. App. 1974).Â 


Johnson further argues that his
continued detention violated due process in light of the police report and
WallaceÂs confession.Â  However, several affirmative links connect Johnson to
the cocaine and the record indicates that Wallace could not be located; there
is no indication in the record that the investigation was unfairly focused on
Johnson.Â  See Harris v. State, No.
06-05-00031-CR, 2005 Tex. App. LEXIS 7558, at *5Â (Tex. App.ÂTexarkana Sept. 14, 2005, no pet.) (not
designated for publication).

ILLEGAL SENTENCE

Â Â Â Â Â Â Â Â Â Â Â  Johnson contends that his
sentence is illegal because of two enhancement paragraphs. Â He argues that
paragraph one is improper because it involved an offense that occurred before September
1, 1994.Â  Paragraph one alleged that Johnson was convicted of manufacture/delivery/possession
of a controlled substance in an amount of 4-200 grams.Â  Because the State
abandoned the manufacture/delivery portion of the enhancement, we are concerned
with possession.Â  Both at the time of the offense and now, possession of a controlled
substance in an amount of 4-200 grams is a felony.Â  See Act of May 18,
1989, 71st Leg., R.S., ch. 678, Â§ 1, 1989 Tex. Gen. Laws 2230, 2936-37 (amended
1993) (current version at Tex. Health & Safety Code Ann. Â§ 481.115(d) (Vernon 2003)).Â  It could be
used for enhancement.Â  See Tex. Pen. Code Ann. Â§ 12.42(a)(2)Â Â (Vernon Supp. 2008) (ÂIf it is shown on the trial of a state
jail felony punishable under Section 12.35(a) that the defendant has previously
been finally convicted of two feloniesÂon conviction the defendant shall be
punished for a second-degree felony.Â); see also Tex. Pen. Code
Ann. Â§ 12.33Â (Vernon
2003) (A second degree felony is punishable by 2 to 20 years imprisonment and a fine not to exceed $10,000);Â Boren v. State, 182 S.W.3d 422, 424 (Tex. App.ÂFort
Worth 2005, pet. refÂd).Â 

Â Â Â Â Â Â Â Â Â Â Â  Johnson further contends that paragraph
one is improper because the State failed to prove the amount of the controlled
substance.Â  However, the
State introduced the penitentiary packet into evidence at guilt-innocence.Â  At punishment, the State moved to
reintroduce all evidence admitted at guilt-innocence.Â  The pen packet could be
used to prove the prior conviction and the
State was Ânot required to prove the defendant guilty of each element of the
prior convictions alleged; since that has already been done at previous
trials.ÂÂ  Reynolds v.
State, 227 S.W.3d 355, 360-61 (Tex. App.ÂTexarkana 2007, no pet.); see
Flowers v. State, 220 S.W.3d 919, 921-22 (Tex. Crim. App. 2007).

As for paragraph two, Johnson pleaded
ÂtrueÂ to the second enhancement paragraph and the record does not affirmatively
reflect that the enhancement is improper; thus, he is estopped from challenging
the use of that conviction to enhance his sentence.[1]Â 
See Ex parte Rich, 194 S.W.3d 508, 513 (Tex. Crim. App. 2006).

In summary, the enhancement paragraphs
were properly used and JohnsonÂs sentence is not illegal.

UNPRESERVED COMPLAINTS

Â Â Â Â Â Â Â Â Â Â Â  Johnson has raised other
complaints addressing the granting of the StateÂs motion in limine, defects in
the enhancement paragraphs, improper jury argument, and admission of his 1993
and 1997 convictions for possession of cocaine, a 1989 conviction, cigar guts,
driving while license suspended offense, and county jail offenses.Â  However,
Johnson has failed to preserve these issues for appellate review by neglecting
to object when testimony or evidence regarding these matters was admitted or an
objection was otherwise required.Â  See Tex. R.
App. P. 33.1.

INEFFECTIVE ASSISTANCE

Â Â Â Â Â Â Â Â Â Â Â  To prove ineffective assistance of trial counsel, an appellant
must show that: (1) counselÂs performance was deficient; and (2)
the defense was prejudiced by counselÂs deficient performance.Â  See Strickland
v. Washington,
466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); see
also Wiggins
v. Smith, 539
U.S. 510, 521, 123 S. Ct. 2527, 2535, 156 L. Ed. 2d 471 (2003).

Â Â Â Â Â Â Â Â Â Â Â  Johnson alleges several
failures by trial counsel.Â  He filed a pro se motion for new trial
alleging ineffective assistance, but no hearing was held on the motion.Â  The
record is silent as to any reasons explaining trial counselÂs actions and we
will not so speculate.Â  See Thompson
v. State, 9
S.W.3d 808, 814 (Tex. Crim. App. 1999).Â  Absent a record revealing trial counselÂs
strategy or motivation, Johnson has not defeated the strong presumption that
trial counselÂs actions fell within the wide range of reasonable professional
assistance. Â See id.Â  His ineffective assistance claim is
better raised through an application for a writ of habeas corpus. Â See Rylander
v. State, 101
S.W.3d 107, 110 (Tex. Crim. App. 2003).

Â Â Â Â Â Â Â Â Â Â  To prove ineffective assistance of
appellate counsel, Johnson must show that: (1) counselÂs performance was
deficient; and (2) there is a reasonable probability he Âwould have prevailed
on appealÂ but for counselÂs deficient performance. Â Ex parte Santana, 227 S.W.3d 700, 704-05 (Tex.
Crim. App. 2007).Â  Johnson cannot meet this standard.Â  Our review of
the trial record does not suggest that there is any reasonable probability that
Johnson Âwould have prevailed on appealÂ if counsel had presented some of the
issues he discusses in his pro se response. Â See id.

Independent
Review

Having
conducted an independent review of the record, we find this appeal to be wholly
frivolous.Â  We affirm the
judgment.Â  Pursuant to Rule of Appellate Procedure 48.4,
counsel must send Johnson a copy of our decision by certified mail, return
receipt requested, at JohnsonÂs last known address. Â Tex. R.
App. P. 48.4.Â 
Counsel must also notify
Johnson of his right to file a pro se petition for discretionary
review. Â Id.; see also Ex parte Owens, 206 S.W.3d 670, 673-74 (Tex.
Crim. App. 2006); Villanueva v. State, 209 S.W.3d 239, 249 (Tex. App.ÂWaco
2006, no pet.). Â We grant counselÂs motion to withdraw, effective
upon counselÂs compliance with the aforementioned notification requirement as
evidenced by Âa letter [to this Court] certifying his compliance.Â Â See Tex. R.
App. P. 48.4.

Â 

Â 

FELIPE REYNA

Justice

Before Chief
Justice Gray,

Justice
Reyna, and

Justice
Davis

(Chief
Justice Gray concurring with note)*

Affirmed

Opinion
delivered and filed July 8, 2009

Do not publish

[CR25]

Â 

*Â Â Â Â Â Â Â Â Â Â  (Chief
Justice Gray joins no part of the opinion.Â  A separate opinion will not
follow.Â  He notes, however, that for the reasons expressed in his concurring
opinion in Kirven v.
State, No. 10-08-00064-CR, 2009 Tex. App. LEXIS 3338,Â at
*10-14Â (Tex. App.ÂWaco May 13, 2009, no pet.) (not designated for
publication) (Gray, C.J., concurring),
his dissenting opinion in Garner
v. State, No. 10-05-00218-CR, 2007 Tex. App. LEXIS 4246, at *17-20
(Tex. App.ÂWaco May 30, 2007, pet. refÂd) (not designated for publication)
(Gray, C.J., dissenting),
and his concurring opinion in Villanueva v. State, 209 S.W.3d 239, 249-252 (Tex.
App.ÂWaco 2006, no pet.) (Gray, C.J., concurring), he joins only the
judgment affirming the trial courtÂs judgment.)









[1] Â Â Â Â Â Â Â Â Â Â Â Â Â  Johnson argues that the
enhancement paragraph listed an incorrect 1999 date instead of the correct 1997
date.Â  However, the correct date is included in the penitentiary packet
admitted into evidence.Â  See Reese
v. State, 905 S.W.2d
631, 635 (Tex. App.ÂTexarkana 1995, pet. refÂd) (Â[V]ariance between [] indictment and [] proof
was not material or fatal in light of the otherwise precise correlation between
the pen packet and the identifying information stated within the indictment.Â); see
also Guerra v. State, No.
04-06-00245-CR, 2007 Tex. App. LEXIS 1955,Â at
*13-14Â (Tex. App.ÂSan Antonio Mar. 14, 2007, pet. refÂd) (not designated
for publication) (Because Âpenitentiary packets with the correct cause numbers were
admitted into evidence during the punishment phase,Â and Guerra did not Âallege
that the variancesÂ between the cause numbers in the enhancement
allegations and those read at the punishment phase surprised him to his
prejudice, the variances are not material and do not require reversal.Â).Â