

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00419-CR

———————————————

ANTHONY CURTIS JOHNSON JR., Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 372nd District Court
Tarrant County, Texas
Trial Court No. 1653739

---

Before Sudderth, C.J.; Birdwell and Bassel, JJ.
Memorandum Opinion by Chief Justice Sudderth

**MEMORANDUM OPINION**

A jury found Appellant Anthony Curtis Johnson Jr. guilty of the offense of indecency with a child by exposure, a third-degree felony, *see* Tex. Penal Code Ann. § 21.11(a)(2), (d), and, after finding both allegations in the habitual offender notice true, assessed his punishment at 40 years' confinement in the penitentiary, *see id.* § 12.42(d). On appeal, in one issue, Johnson contends that the trial court erred by denying his *Batson*[1] challenges because the record failed to support the State's explanations for using two peremptory strikes on African Americans. Because we hold that the trial court did not clearly err in denying Johnson's *Batson* challenges, we overrule his issue and affirm the trial court's judgment.

## I. Background

At the conclusion of voir dire but prior to the jury being sworn, Johnson made two *Batson* challenges. In those challenges, he pointed out that

- five African Americans were on the venire;[2]

- he and the State had struck two African Americans by agreement;

- he had struck one African American;

---

[1]*Batson v. Kentucky*, 476 U.S. 79, 89, 106 S. Ct. 1712, 1719 (1986) ("'[T]he Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race . . . .").

[2]In Johnson's brief, he asserts there were "actually six." He does not, however, explain how he arrived at six. At trial, Johnson asserted that there were five, and no one corrected him.

- the State, among its original strikes, had used one on African American venire member 45; and

- when selecting an alternate juror, the State had used its one allotted strike on African American venire member 59.

Johnson asserted that the State had no race-neutral basis for striking either venire member 45 or venire member 59.

The State responded by explaining that it had struck venire member 45 because her husband had a criminal history and worked at MHMR,[3] which the State alleged might play some role in this case. The State expressed concern that venire member 45 "might not be a very good punishment juror for the State." Regarding venire member 59, the State offered three reasons for its strike: venire member 59's distrust of law enforcement, his reservations about a child witness's credibility, and the low priority he assigned punishment as a goal of the criminal justice system.

Johnson argued that the State's explanations were mere pretext, but the trial court denied his *Batson* challenges.

---

[3]MHMR refers to My Health My Resources of Tarrant County. *See Alferez v. State*, No. 02-24-00210-CR, 2025 WL 2370940, at *1 (Tex. App.—Fort Worth Aug. 14, 2025, no pet.) (mem. op., not designated for publication); *In re G.M.*, No. 02-23-00061-CV, 2023 WL 4243349, at *4 n.9 (Tex. App.—Fort Worth June 29, 2023, pet. denied) (mem. op.).

## II. Discussion

### A. Legal Principles

In *Batson,* the United States Supreme Court held that prosecutors may ordinarily exercise peremptory strikes for any reason related to their views concerning the outcome of the trial, but "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race." *Grant v. State*, 325 S.W.3d 655, 657 (Tex. Crim. App. 2010) (quoting *Batson*, 476 U.S. at 89, 106 S. Ct. at 1719). A *Batson* challenge to a peremptory strike has three steps. *Id.* First, the opponent of the strike must make a prima facie showing of racial discrimination. *Id.* Second, the proponent of the strike must provide a race-neutral explanation. *Id.* Third, the trial court must decide whether the opponent has proven purposeful racial discrimination. *Id.*

### B. Standard of Review

On appeal, we sustain the trial court's ruling unless it is clearly erroneous. *Grant*, 325 S.W.3d at 657; *Mathews v. State*, No. 02-19-00173-CR, 2020 WL 5241196, at *1 (Tex. App.—Fort Worth Sept. 3, 2020, no pet.) (mem. op., not designated for publication). Because credibility and demeanor evaluations lie peculiarly within the trial court's province, we defer to it absent exceptional circumstances. *Grant*, 325 S.W.3d at 657.

4

## C. Application

### 1. Step One: Prima Facie Showing of Racial Discrimination

Because the State gave explanations for its strikes, the first *Batson* step—the defendant's making a prima facie showing of racial discrimination—is moot. *Hernandez v. New York*, 500 U.S. 352, 359, 111 S. Ct. 1859, 1866 (1991); *Wheatfall v. State*, 882 S.W.2d 829, 835 (Tex. Crim. App. 1994) (stating that reviewing the trial court's prima facie ruling is moot when the State offers a race-neutral explanation).

### 2. Step Two: Race-Neutral Explanation

#### a. Venire Member 45

Regarding venire member 45, the State gave two race-neutral explanations for its strikes, both of which are supported by the record.

First, on her jury questionnaire, venire member 45 indicated that her husband had some sort of criminal history. "The arrest or conviction of a venireperson's relative is a race-neutral explanation for striking that venireperson." *Jones v. State*, 902 S.W.2d 102, 107 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd).

Second, again on her questionnaire, venire member 45 indicated that her husband worked at MHMR, and the State noted that the record contained an MHMR document involving Johnson—an order requiring MHMR to interview him for possible mental illnesses or disabilities. Mental illnesses and disabilities might play a role as mitigating evidence during the punishment phase of a trial. *See generally Burton v. State*, No. 05-24-00399-CR, 2025 WL 919483, at *4 (Tex. App.—Dallas Mar. 26,

5

2025, no pet.) (mem. op., not designated for publication) ("[W]hile trial courts may consider . . . mental health issues as mitigating factors in sentencing, they are not required to do so, and . . . mental health issues do not constitute mitigating factors as a matter of law."); *Moore v. State*, No. 02-17-00277-CR, 2018 WL 3968491, at *2 n.5 (Tex. App.—Fort Worth Aug. 16, 2018, pet. ref'd) (mem. op., not designated for publication) ("[The defendant's] disabilities were not a defense to prosecution and, based on the jury's punishment verdicts and the trial court's cumulating his sentences, apparently not much of a mitigating factor."). And having a spouse who has familiarity with an aspect of the case can be a race-neutral explanation for a peremptory strike. *See Reese v. State*, 905 S.W.2d 631, 639 (Tex. App.—Texarkana 1995, pet. ref'd, untimely filed) ("In this case, the juror was married to someone intimately involved in the legal system. The prosecutor could well have feared . . . that she would rely on her assumed knowledge about that system rather than on the evidence produced at the trial.").

Overall, citing both the husband's criminal history and his employment at MHMR, the State argued venire member 45 might make a poor punishment juror for the State.

### b. Venire Member 59

Regarding venire member 59, the State gave three race-neutral explanations for striking him that the record supported.

6

First, the State asserted that venire member 59 distrusted law enforcement officers. Venire member 59's questionnaire supported this assertion. In venire member 59's response to the questionnaire, he stated, "I don[']t trust police officers[,] and I think [the] majority believe they are above the same laws they enforce[.]" Striking a venire member because of a disfavorable view of law enforcement officers is a race-neutral explanation. *Evans v. State*, 683 S.W.3d 573, 586 (Tex. App.—Eastland 2024, no pet.).

Second, the State noted that venire member 59 had expressed reservations about a child witness's credibility. The record supports this assertion too. When the questionnaire asked venire member 59 how he compared a child's testimony to an adult's, he indicated that he drew a distinction between the two: "In comparison[,] it matters[,] but memories and exaggeration of details could also play a role[.]" Although this statement might not have risen to the level to strike venire member 59 for cause, the State could have concluded that it was sufficient to suggest that as between children and adults, venire member 59 favored an adult's credibility over a child's. *See generally Madrid v. State*, No. 01–15–00977–CR, 2017 WL 1629515, at *3 (Tex. App.—Houston [1st Dist.] May 2, 2017, no pet.) (mem. op., not designated for publication) (recognizing that complete impartiality is not possible and setting out the degree of bias or prejudice necessary to strike a venire member for cause).

Third, the State asserted that when listing what the priorities of the criminal justice system should be, venire member 59 placed punishment last. Indeed, when

asked to prioritize the purpose of the justice system, on venire member 59's questionnaire, he wrote, "[R]ehabilitation, deterrence, punishment." Preferring rehabilitation over punishment is a race-neutral explanation. *Granderson v. State*, 595 S.W.3d 892, 896 (Tex. App.—Houston [14th Dist.] 2020, no pet.).

### 3. Step Three: Whether Johnson Had Proven Purposeful Racial Discrimination

When denying Johnson's *Batson* challenges, the trial court said, "I do find that the State has given race[-]neutral reasons for their strikes for [n]umber 45, the criminal history as well as the MHMR reason, as well as [n]umber 59." But the inquiry does not stop there. Once race-neutral reasons have been offered, step three requires that the court assess whether such neutral reasons were mere pretext. In the third step, the burden shifts to Johnson to prove purposeful racial discrimination. *See Grant*, 325 S.W.3d at 657.

To meet this burden, Johnson pointed out that the State did not orally ask venire members 45 and 59 about its concerns during voir dire and thus did not sufficiently substantiate their validity. But the Texas Court of Criminal Appeals has already considered a comparable argument in *Grant* and rejected it for two reasons. *See id.* at 660–61. First, the State had questioned the venire member about its concern in the written questionnaire, and the court saw no distinction between a written response and an oral one. *Id.* at 660–61. And second, the court reasoned that "a lack of oral questioning to flesh out a written response has significantly less persuasive

8

value when prospective jurors are being questioned together." *Id.* at 661. The Texas Court of Criminal Appeals did not dismiss a failure to ask meaningful questions as a factor, but it held that whether the failure was dispositive depended on the circumstances, *id.* at 656, and deference must be given to the trial court's evaluation of the prosecutor's credibility, *id.* at 661. After reviewing the record, the court concluded that the trial court's ruling denying the appellant's *Batson* challenge was not clearly erroneous. *Id.*

In Johnson's case, the State had written responses to a questionnaire that it was entitled to rely on. *See id.* at 660–61. And Johnson's voir dire was conducted before an entire panel. This lessens the significance of the State's failure to ask specific venire members about its concerns during voir dire. *Id.* at 661.

Ultimately, once the State had provided a race-neutral explanation, Johnson had the burden of persuasion on whether the strikes were racially motivated. *See id.* at 657; *Johnson v. State*, 68 S.W.3d 644, 649 (Tex. Crim. App. 2002). Based on the trial court's ruling, Johnson failed to persuade it that the State's explanations were merely pretexts for racial discrimination. *See Johnson*, 68 S.W.3d at 649. Because the record supports the State's race-neutral explanations and because credibility determinations lie within the province of the trial court, we hold that the trial court did not clearly err by denying Johnson's *Batson* challenges. *See Grant*, 325 S.W.3d at 661.

We overrule Johnson's sole issue.

9

### III.  Conclusion

Having overruled Johnson's sole issue, we affirm the trial court's judgment.

/s/ Bonnie Sudderth.

Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  November 6, 2025