Opinion issued January 15, 2009
















     

                                        

                               

In The
Court of Appeals
For The
First District of Texas




NO. 01-07-00991-CR




GUSTAVO DE JESUS LOPEZ, Appellant

v.

THE STATE OF TEXAS, Appellee




On Appeal from the 177th District Court
Harris County, Texas
Trial Court Cause No. 1,085,785


 
 
 
 
MEMORANDUM OPINION
          A jury convicted appellant, Gustavo De Jesus Lopez, of capital murder. See
Tex. Pen. Code Ann. § 19.03(a)(7)(A) (Vernon Supp. 2008). The trial court assessed 
punishment at life in prison without parole. In four issues, appellant contends that:
(1) the evidence supporting his conviction was legally and factually insufficient; (2)
the trial court erred in admitting autopsy photographs of the deceased; and (3) the
trial court erred in overruling appellant’s objections to improper jury argument by the
State. We affirm.
Facts
          At about 1 p.m. on January 10, 2006, in a strip center at Hardwicke and Airline,
a woman flagged down Aldine Independent School District police officer Alfred
Salazar and told him that two people were dead in a nearby record shop. Officer
Salazar entered the shop, where he found a man lying about two feet from the door
and a woman lying behind the sales counter. Both were dead. He secured the scene
until Houston Police Department (“HPD”) investigators arrived. Nine-millimeter and
.380 caliber bullets and shell casings were found at the scene and during the autopsies
of the deceased. At trial, investigators testified that robbery did not appear to be the
motive for the crime, as neither person’s wallet had been emptied or stolen and no one
had tampered with the record shop’s cash register.
          Appellant’s live-in girlfriend testified that appellant left their apartment in the
morning on the day of the shootings and returned at approximately 3:00 p.m. with his
Taurus nine-millimeter pistol in his hand and blood on his shoes. She further testified
that, when a news report on the shootings aired on television later that day, appellant
called her into the living room. She “asked him if he had done that,” and appellant,
after first shaking his head no, said yes. That night, the girlfriend overheard a
conversation in the living room between appellant and a friend about splitting money.
The next day, appellant left the apartment and returned in a Cadillac Escalade.
Immediately after telling his girlfriend that “some man” had given him the Escalade,
appellant left and returned without it. He told his girlfriend that he had returned the
car because he did not want to “catch the neighborhood’s attention.”
          In May of 2006, appellant’s girlfriend attempted to obtain a restraining order
against appellant. She testified that she told officers she was “kind of scared” of
appellant because “supposedly he had done—he had killed people before.” She
further testified that she specifically mentioned “the killing on Airline” of a man and
a woman and “the 9-millimeter.” Based on her statements, homicide investigators
went to appellant’s apartment to interview her. Appellant, who was in the apartment,
consented to a search of the apartment. Investigators found nine-millimeter and .380
caliber ammunition and a Taurus nine-millimeter pistol, which ballistics tests
indicated was used in the shootings.
Legal Sufficiency
          In his first issue, appellant contends that the evidence is legally insufficient to
support his conviction.
Standard of Review
          We review the legal sufficiency of the evidence by viewing the evidence in the
light most favorable to the verdict and determining whether any rational trier of fact
could have found the essential elements of the offense beyond a reasonable doubt. 
See Cruz v. State, 238 S.W.3d 381, 386 (Tex. App.—Houston [1st Dist.] 2006, pet.
ref’d) (citing King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000)). The trier
of fact is the sole judge of the weight and credibility of the evidence. See Margraves
v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). Thus, when performing a legal
sufficiency review, we may not re-evaluate the weight and credibility of the evidence
and substitute our judgment for that of the factfinder. See Dewberry v. State, 4
S.W.3d 735, 740 (Tex. Crim. App. 1999). We must resolve any inconsistencies in the
evidence in favor of the verdict. See Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim.
App. 2000).
The Evidence
          Under the law applicable in this case, a person commits the offense of capital
murder if he intentionally or knowingly causes the death of an individual and murders
more than one person during the same criminal transaction. See Tex. Pen. Code Ann.
§§ 19.02(b)(1), 19.03(a)(7)(A) (Vernon 2003 & Supp. 2008). The medical examiner
testified that the deceased were killed by multiple gunshot wounds. The State’s
ballistics expert testified that a Taurus nine-millimeter pistol seized during a
consensual search of appellant’s apartment fired several of the bullets that were
recovered at the crime scene and during the autopsies of the deceased. Investigators
also found .380 caliber ammunition during the search of appellant’s apartment. The
State’s ballistics expert testified that .380 caliber bullets were also recovered at the
crime scene and during the autopsies.
          Appellant’s live-in girlfriend testified that, on the day of the shootings,
appellant left their apartment in the morning and returned at about 3:00 in the
afternoon with his Taurus nine-millimeter pistol in his hand and blood on his shoes.
She further testified that, later that day, appellant had told her he committed the crime
and that she overheard appellant discuss splitting money with another man. Finally,
she also testified that appellant drove a Cadillac Escalade to the apartment the next
day and that he returned it to avoid “attention.” Prior to the day of the shootings, she
stated, appellant had told her that he was going to “do something and make a lot of
money” but would not tell her what it was.
          Other witnesses corroborated the girlfriend’s testimony. The girlfriend’s sister
testified that appellant told her that he returned the Escalade because “he didn’t want
nobody to suspect that he had had some—he was involved in a killing.” Two men
who were in a tire shop near the record shop on the day of the shootings heard
gunshots and saw a man get into a blue car on the passenger side; another person was
in the driver’s seat. The girlfriend testified that, on the day of the killings, appellant
had a blue Lexus.
          After reviewing this evidence in the light most favorable to the verdict, we hold
that a rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt. See Bousquet v. State, 47 S.W.3d 131, 137 (Tex.
App.—Houston [1st Dist.] 2001, pet. ref’d). Accordingly, we hold that the evidence
was legally sufficient to support appellant’s conviction and overrule appellant’s first
issue.
Factual Sufficiency
          In his second issue, appellant contends that the evidence is factually
insufficient to support his conviction.
Standard of Review 
          When conducting a factual sufficiency review, we view all of the evidence in
a neutral light. See Brown v. State, 212 S.W.3d 851, 859 (Tex. App.—Houston [1st
Dist.] 2006, pet. ref’d) (citing Ladd v. State, 3 S.W.3d 547, 557 (Tex. Crim. App.
1999)). We will set the verdict aside only if (1) the evidence is so weak that the
verdict is clearly wrong and manifestly unjust or (2) the verdict is against the great
weight and preponderance of the evidence. Brown, 212 S.W.3d at 859 (citing Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000)). Under the first prong of Johnson,
we cannot conclude that a conviction is “clearly wrong” or “manifestly unjust” simply
because, on the quantum of evidence admitted, we would have voted to acquit had we
been on the jury. Brown, 212 S.W. 3d at 859 (citing Watson v. State, 204 S.W.3d 404,
417 (Tex. Crim. App. 2006)). Under the second prong of Johnson, we cannot declare
that a conflict in the evidence justifies a new trial simply because we disagree with
the jury’s resolution of that conflict. Id. Before finding that evidence is factually
insufficient to support a verdict under the second prong of Johnson, we must be able
to say, with some objective basis in the record, that the great weight and
preponderance of the evidence contradicts the jury’s verdict. Id. In conducting a
factual sufficiency review, we must also discuss the evidence that, according to the
appellant, most undermines the jury’s verdict. Brown, 212 S.W.3d at 859 (citing Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003)).
          We may not re-weigh the evidence and substitute our judgment for that of the
fact-finder. King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). The
fact-finder alone determines what weight to place on contradictory testimonial
evidence because that determination depends on the fact-finder’s evaluation of
credibility and demeanor. Cain v. State, 958 S.W.2d 404, 408-09 (Tex. Crim. App.
1997). As the determiner of the credibility of the witnesses, the fact-finder may
choose to believe all, some, or none of the testimony presented. Id. at 407 n. 5. 
The Evidence
          Appellant contends that the testimony of appellant’s girlfriend was unreliable
for several reasons: (1) she told appellant’s mother that she had lied to police; (2) she
admitted on the stand that she had made statements to the authorities under the threat
of losing her children; (3) she admitted to investigators that the police provided
information for her to put in her statement; (4) she admitted to investigators that she
implicated appellant because she was angry at him; (5) she had fabricated a police
complaint about a former boyfriend; and (6) she admitted on the stand that she had
been offered help in immigration proceedings in exchange for her testimony. The jury
is the exclusive judge of the credibility of the witnesses and of the weight to be given
their testimony. Barnes v. State, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994).
Reconciliation of conflicts in the evidence is within the exclusive province of the
jury. Losada v. State, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). The jury may
believe some witnesses and refuse to believe others, and it may accept portions of the
testimony of a witness and reject other portions. Id. In the instant case, the jury,
despite an extensive and thorough cross-examination, chose to believe the girlfriend’s
testimony implicating appellant. We cannot question the jury’s determination that that
testimony was credible. 
          Appellant further contends that there is no direct evidence in the form of
fingerprints, surveillance videotapes, or eyewitness testimony placing appellant at the
scene of the crime. Circumstantial evidence alone is sufficient to establish guilt.
Guevara v. State, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). It is not necessary that
every fact point directly and independently to the defendant’s guilt; it is enough if the
conclusion is warranted by the combined and cumulative force of all the
incriminating circumstances. Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App.
1993). During a search of appellant’s apartment, investigators recovered a gun that
was used in the shootings. Appellant’s girlfriend testified that appellant came home
on the afternoon of the murders with that gun in his hand and blood on his shoes and
that he later admitted his role in the killings to her. The girlfriend and her sister both
testified that appellant told them that he returned the Escalade because he was
concerned about “[catching] the neighborhood’s attention” and causing people to
suspect that “he was involved in a killing.” Two men who were near the scene of the
crime testified that, just after they heard gunshots, they saw a man get into a car that
was the same color as appellant’s car. Viewing the relevant evidence in a neutral
light, favoring neither the State nor appellant, and with appropriate deference to the
jury’s credibility determinations, we conclude that the evidence supporting the verdict
is not too weak to support the jury’s finding of guilt beyond a reasonable doubt and
that the weight of the evidence contrary to the verdict is not so strong that the State
could not have met its burden of proof. Pena v. State, 251 S.W.3d 601, 609 (Tex.
App.—Houston [1st Dist.] 2007, pet. ref’d). Accordingly, we hold that the evidence
is factually sufficient to support appellant’s conviction and overrule appellant’s
second issue.
Rule 403
          In his third issue, appellant argues that the trial court erred in admitting autopsy
photographs of the deceased. Appellant contends that the probative value of the
photographs was substantially outweighed by their prejudicial effect on the jury and
that the photographs were needlessly duplicative of other exhibits and testimony. 
Standard of Review
          The trial court’s decision to admit or exclude evidence is reviewed for an abuse
of discretion. Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op.
on reh’g). As a general rule, a photograph is admissible if it is relevant to a material
issue and is an accurate representation of its subject as of a given time. Holford v.
State, 177 S.W.3d 454, 463 (Tex. App.—Houston [1st Dist.] 2005, pet. ref’d) (citing
DeLuna v. State, 711 S.W.2d 44, 46 (Tex. Crim. App. 1986)). However, relevant
evidence, including a photograph, may be excluded if its probative value is
substantially outweighed by the danger of unfair prejudice or other Rule 403 counter-factors.


 See Holford, 177 S.W.3d at 463; Threadgill v. State, 146 S.W.3d 654, 670-71 (Tex. Crim. App. 2004); Tex. R. Evid. 403. We apply Rule 403 to these
photographs and determine whether they assist the jury with its decision of guilt and
add something relevant, legitimate, and logical to the testimony that they accompany.
See Holford, 177 S.W.3d at 463; Erazo v. State, 144 S.W.3d 487, 491 (Tex. Crim.
App. 2004). If helpful, photographs are admissible unless “the emotional and
prejudicial aspects substantially outweigh the helpful aspects.” Erazo, 144 S.W.3d
at 491-92. 
Description of Exhibits
          Appellant challenges the admission of three separate groups of photographs on
the grounds that the photographs were inflammatory, prejudicial, and cumulative.


 All
of the challenged exhibits were admitted during the testimony of the medical
examiner. 
State’s Exhibits 84, 85, 87, 88, and 89
          Appellant first challenges the admission of State’s Exhibits 84, 85, 87, 88, and
89. Exhibits 84 and 85 depict a gunshot entrance wound on the male complainant’s
chest. The first, shot from farther away, shows the location of the wound. The second,
a close-up shot, enabled the medical examiner to explain to the jury how she was able
to determine that the wound was an entrance wound. 
          Exhibits 87 and 88 depict a gunshot exit wound on the male complainant’s
back. As with exhibits 84 and 85, one picture is shot from farther away and shows the
location of the wound, while the other enabled the medical examiner to explain how
the wound was characteristic of an exit wound. 
          Exhibit 89 shows all three gunshot entrance wounds on the male complainant’s
body, one on his chest and two on his face. The medical examiner used this
photograph to explain how blood loss and a skull fracture caused by the three wounds
combined to cause the male complainant’s death.
 
State’s Exhibits 94-98, 100, and 101
          Appellant next challenges the admission of State’s Exhibits 94-98, 100, and
101. These exhibits depict multiple gunshot entrance and exit wounds on the head
and face of the female complainant. In explaining cause of death to the jury, the
medical examiner used these photographs in much the same way she used those of the
male complainant, employing wider angles to show the locations of the wounds and
tighter shots to show whether the wounds were entrance or exit wounds. 
State’s Exhibits 104-110
          Lastly, appellant challenges the admission of State’s Exhibits 104-110. These
exhibits depict multiple gunshot entrance and exit wounds on the hands and right arm
of the female complainant. The medical examiner used these photographs to show
that several bullets passed through the hands and arm of the female complainant.
Admissibility
          We conclude that the autopsy photographs were probative of the nature of the
injuries to the complainants and that they were helpful to the jury in determining
appellant’s participation in the complainants’ deaths. See Erazo, 144 S.W.3d at 494
(finding photographs could be helpful to juries, in part, because they show wounds
suffered by victim for whose death defendants were on trial). We next determine
whether any unfair prejudicial effect of the photographs substantially outweighs their
relevance. We consider the probative value of the evidence, the potential of the
evidence to impress the jury in some irrational but nevertheless indelible way, the
time that the proponent needs to develop the evidence, and the proponent’s need for
the evidence. Id. at 489. In the context of photographs, we also consider the number
of exhibits offered, their gruesomeness, their detail, their size, whether they are black
and white or color, whether they are close-up shots or of the whole body, whether the
body is naked or clothed, the availability of other means of proof, and other
circumstances unique to the individual case. Id. (citing Narvaiz v. State, 840 S.W.2d
415, 429 (Tex. Crim. App. 1992)). Autopsy photographs generally are admissible
unless they depict mutilation of the victim caused by the autopsy itself. Rojas v. State,
986 S.W.2d 241, 249 (Tex. Crim. App. 1998). Here, the photographs, which were
taken after the bodies were cleaned, show no mutilation, and they are not otherwise
gruesome or wrenching in any way. While the jury saw color copies of the
photographs, the photographs do not show the complainants’ entire bodies and were
8 x 10 inches in size. Although there are nineteen challenged photographs, they are
not duplicative of other evidence in the case or of each other. The medical examiner
spent a substantial amount of time—approximately thirty pages out of fifty-one pages
of direct testimony—discussing the challenged photographs, but that time was not
unreasonable given the large number of injuries. 
          We conclude that the probative nature of the challenged photographs was not
substantially outweighed by any unfair prejudicial effect. The trial court thus did not
abuse its discretion in admitting the autopsy photographs into evidence. We overrule
appellant’s third issue.
Jury Argument
          In his fourth issue, appellant contends that the trial court erred in overruling
appellant’s objections to improper jury argument by the State.
Standard of Review
          Permissible jury argument falls within one of four categories: (1) summation
of the evidence; (2) reasonable deductions from the evidence; (3) answer to argument
of opposing counsel; and (4) pleas for law enforcement. Strain v. State, 126 S.W.3d
207, 209 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (citing Felder v. State, 848
S.W.2d 85, 94-95 (Tex. Crim. App. 1992). If we determine that the argument fell
outside these four categories, we must then determine whether, in light of the record
as a whole, there is a reasonable probability that the improper argument might have
contributed to appellant’s conviction or punishment. Goldberg v. State, 95 S.W.3d
345, 388 (Tex. App.—Houston [1st Dist.] 2002, pet. ref’d) (citing Orona v. State, 791
S.W.2d 125, 128 (Tex. Crim. App. 1990)). If the argument exceeds the bounds of
proper jury argument, reversible error occurs only when, in light of the record as a
whole, the argument is extreme, is manifestly improper, injects new facts into the
proceeding which are harmful to the accused, or violates a mandatory statutory
provision. Simpson v. State, 886 S.W.2d 449, 454 (Tex. App.—Houston [1st Dist.]
1994, pet. ref’d). 
Prosecutor’s Statements
          Appellant contends that the State made four improper arguments during its jury
argument.
Lineup
          Two witnesses testified that they heard shots and then saw a man come from
inside the record shop or from the direction of the record shop and get into the
passenger side of a blue car. Both witnesses looked at a lineup but could not make a
positive identification. The State referred to the lineup in its closing argument:
Prosecutor: They could not identify the defendant. They said he could have
been in the lineup, maybe he wasn’t. They don’t know. They just didn’t get
good enough a look.
 
Defense counsel: Objection to mischaracterization of the testimony. They
simply said they couldn’t identify anyone.

          The trial court overruled the objection. Appellant contends that the prosecutor’s
statement introduced new and harmful evidence, evidently because the statement
eliminated the possibility that the witnesses were certain that the man they saw
leaving the scene was not appellant. We disagree. One of the witnesses gave
testimony that was virtually identical to the prosecutor’s characterization:
Prosecutor: And do you say that the man you saw getting into the passenger’s
side was not in the lineup, or he could have been but you just didn’t see him
enough? 

          Witness: He could have been, but I don’t recognize him.

          Prosecutor: Okay. Why do you think it is that you wouldn’t recognize him?
 
Witness: It is impossible to recognize a person if you have only seen him for
seconds.

          The other witness testified that he only saw the man who left the record shop
“from the back” and was also unable to recognize anyone in the lineup. We hold that
the prosecutor’s statement was not an improper summation of the witnesses’
testimony.
Substance of Girlfriend’s Testimony
          Appellant’s live-in girlfriend testified that appellant admitted his role in the
killings to her. Responding to appellant’s attacks on the girlfriend’s credibility, the
State argued in closing that there was “no evidence that anyone told her what she had
to say.” Appellant objected to the prosecutor’s statement as being a direct
contradiction of the evidence: “She did, in fact, say that people told her what to say.”
The court overruled appellant’s objection. 
          Despite extensive cross-examination, appellant’s girlfriend never testified that
she was coerced by investigators into fabricating testimony. This exchange, which
took place on cross-examination of the girlfriend, effectively encapsulates the
evidence presented during her testimony:
Defense counsel: I’m not saying the police told you, you have to put in this
information, but they talked about things and you felt—I believe this is what
you said, correct me if I’m wrong, that you felt you had to include these things
they told you about in your statement to satisfy them; is that correct?

          Witness: To leave me alone.

          The girlfriend’s initial implication of appellant arose through voluntary
statements made during her attempt in May 2006 to obtain a restraining order against
him. As discussed below, by the State’s own admission, there is evidence in the
record that the girlfriend was compelled to testify; but there is no direct evidence that
she was made to perjure herself. We hold that the trial court did not abuse its
discretion in overruling appellant’s objection to the prosecutor’s statement.
Compulsion of Girlfriend’s Testimony
          The following exchange took place during the State’s argument:
Prosecutor: I’m sure they [investigators] did threaten her and tell her she had
to tell them what she knew, because we have to know what she knows. She
knows something and she’s in a position to know it, just like I have a duty to
bring her here to you. You need to hear from her. 
Let me ask you this question. You are taxpayers in this county and citizens
here, and prosecutors and police officers are paid by the taxpayers of this
county. You ask yourself— 

          Defense counsel: Your Honor, I object to this as improper argument.

          The Court: Overruled.
 
Prosecutor: You ask yourself what, in the same position, you would have us
do?

          Appellant contends that the State’s argument was not a proper plea for law
enforcement. 
          Proper pleas for law enforcement include arguing the relationship between the
jury’s verdict and the deterrence of crime in general, arguing that juries should deter
specific crimes by their verdicts, and arguing the impact of the jury’s verdict on the
community. See Borjan v. State, 787 S.W.2d 53, 55-56 (Tex. Crim. App. 1990)). On
the other hand, the State is not permitted to argue that the community or any
particular group in the community demands or expects a verdict of guilty or a specific
punishment. Id. at 56. In other words, the State cannot ask the jury to base a
conviction on public sentiment or desire rather than the evidence before it. Cortez v.
State, 683 S.W.2d 419, 421 (Tex. Crim. App. 1984). The State did not do so here, but
rather asked the jury not to penalize the State for having compelled a witness’s
testimony. We hold that the trial court did not abuse its discretion in overruling
defense counsel’s objection.
Failure to Call Witnesses
          Lastly, appellant contends that the following statements by the State constituted
impermissible argument because they shifted the burden of proof:
Prosecutor: We both have the right to call witnesses. He certainly doesn’t have
to and it’s all my burden and I’ve met it. And may I say to you fervently, the
State has no doubt, no doubt at all. We both have the right to call witnesses. He
didn’t call any witnesses to prove any of the stuff he just argued to you.

          It is a well-settled rule that the State may comment in argument on the failure
of a defendant to call competent and material witnesses. Ellis v. State, 877 S.W.2d
380, 384-85 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d) (citing Carrillo v.
State, 566 S.W.2d 902, 912 (Tex. Crim. App. 1978)). The State may also argue that
the reason for such failure is that any such testimony would be unfavorable to the
defense. Id. We hold that the trial court did not abuse its discretion in overruling
defense counsel’s objection.
          Appellant further contends that the prosecutor’s statement was an
impermissible comment on his own failure to testify. Although appellant did not
preserve this complaint at the trial court level, no objection is required if an error is
so egregious that it rises to constitutional dimensions. Boler v. State, 177 S.W.3d 366,
373 (Tex. App.—Houston [1st Dist.] 2005, pet. ref’d) (citing Jasper v. State, 61
S.W.3d 413, 420 (Tex. Crim. App. 2001)); Tex. R. Evid. 103(d). To violate the right
against self-incrimination, the offending language must be viewed from the jury’s
standpoint and the implication that the comment referred to the defendant's failure to
testify must be clear. Bustamante v. State, 48 S.W.3d 761, 765 (Tex. Crim. App.
2001). The test is whether the language used was manifestly intended or was of such
a character that the jury would necessarily and naturally take it as a comment on the
defendant’s failure to testify. Id. If the language used can reasonably be construed as
referring to the defendant’s failure to produce testimony other than his own, it is not
improper. Nowlin v. State, 507 S.W.2d 534, 536 (Tex. Crim. App. 1974). It is not
sufficient that the language might be construed as an implied or indirect allusion to
the defendant’s failure to testify. Banks v. State, 643 S.W.2d 129, 134 (Tex. Crim.
App. 1982) (citing Nowlin). The prosecutor’s statements require reversal if they call
attention to the absence of evidence that only the testimony of the defendant could
supply. Banks, 643 S.W.2d at 134-35 (citing Myers v. State, 573 S.W.2d 19, 20-21
(Tex. Crim. App. 1978)). 
          In the instant case, the prosecutor stated that appellant had not called any
witnesses to support any of the arguments made by appellant during his closing.
Appellant’s closing argument propounded four primary defensive theories: (1) the
ballistics evidence indicating that the gun found in appellant’s apartment was used
in the shootings was unreliable; (2) appellant’s girlfriend was not a credible witness;
(3) there was no direct evidence that appellant was at the crime scene; and (4) the
prosecution’s theory that appellant committed murder for hire was inconsistent with
the evidence. None of these theories was dependent in its entirety on appellant’s
testimony for its establishment. The language used by the prosecutor could
reasonably be construed as referring to the defendant’s failure to produce testimony
other than his own and was not manifestly intended or of such a character that the
jury would necessarily and naturally take it as a comment on the defendant’s failure
to testify. Accordingly, we do not find any error so egregious as to rise to
constitutional dimensions.
          We overrule appellant’s fourth issue.
Conclusion
          We affirm the judgment of the trial court.
 
                                                             George C. Hanks
                                                             Justice
 
Panel consists of Justices Hanks, Bland, and Wilson.


 
Do not publish. See Tex. R. App. P. 47.2(b).